PEOPLE v. McDONALD.

1. CRIMINAL LAW—STATUTES—GENERAL SAVINGS STATUTE.
    Repeal of any statute does not release any penalty incurred thereunder unless the repealing act shall so expressly provide and the repealed statute shall be considered as remaining in force for the purpose of prosecution for the enforcement of such a penalty (CL 1948, § 8.4).

2. SAME—BREAKING AND ENTERING—AMENDMENT OF STATUTE—EFFECT.
    Statute abolishing distinction between daytime and nighttime breaking and entering does not expressly relinquish any penalty

REFERENCES FOR POINTS IN HEADNOTES
[1]  50 Am Jur, Statutes § 528.
[2]  21 Am Jur 2d, Criminal Law § 578.
[3]  47 Am Jur, Searches and Seizures § 7.
[4, 5]  47 Am Jur, Searches and Seizures § 52 et seq.
[6, 7]  47 Am Jur, Searches and Seizures §§ 18, 52 et seq.
[8]  13 Am Jur 2d, Burglary § 53 et seq.
[9]  13 Am Jur 2d, Burglary §§ 45, 46, 77.

incurred under the nighttime provision, and a prosecution of defendant for nighttime breaking and entering committed before amendatory act is not barred by the amendment (CL 1948, § 750.110; ·PA 1964, No 133).

3. SAME—SEARCH AND SEIZURE—CONSTITUTIONAL LAW—STANDARDS APPLIED.

Federal standards relating to constitutionally permitted scope of search and seizure are applicable in State courts to the question of whether evidence obtained by search and seizure is admissible in State criminal prosecutions.

4. SAME—SEARCH AND SEIZURE—WITHOUT WARRANT—VALIDITY.

Search and seizure conducted in the absence of search warrant depends for its validity on the law's appraisal of the reasonablenessness of the search, only unreasonable warrantless searches being barred.

5. SAME—SEARCH AND SEIZURE—EVIDENCE IN PLAIN VIEW.

Evidence falling in plain view of an officer and thus discovered without a search is subject to seizure and is admissible in evidence since no invasion of defendant's privacy is committed in the seizure of such evidence.

6. SAME—SEARCH AND SEIZURE—REASONABLENESS.

The reasonableness of a warrantless seizure by a police officer of stolen cigarettes and liquor from defendant's automobile after he was arrested for violation of motor vehicle code must be measured against their entire knowledge and all the circumstances of which officers were aware and not the happenstance that they chose originally to charge defendant for a crime other than the breaking and entering in the nighttime with which he was ultimately charged and of which he was convicted (CL 1948, § 750.110).

7. SAME—SEARCH AND SEIZURE.

Evidence in form of cigarettes and liquor which was in plain sight in defendant's automobile and which was seized only after suspicions of officers that a felony had been committed were confirmed was of equal evidentiary weight with that seized before confirmation of such suspicions, and therefore appellate court need not decide whether property seized without a search because of suspicion only should be suppressed and held inadmissible.

8. Same—Breaking and Entering—Possession of Goods.

  Unexplained possession of goods recently stolen, unaccompanied by other facts indicating guilt, will not sustain conviction for breaking and entering (CL 1948, § 750.110).

9. Same—Evidence—Breaking and Entering.

  Muddy tire tracks indicating that defendant had been at scene of breaking and entering shortly before he was apprehended and testimony that his automobile had been seen near place where crime was committed earlier in the night, together with evidence that shortly after the breaking and entering the defendant was in possession of goods stolen from the store broken into, were sufficient to justify sending case to jury on charge of breaking and entering in the nighttime (CL 1948, § 750.110).

Appeal from Lenawee, Martin (Rex B.), J. Submitted Division 2 May 2, 1967, at Lansing. (Docket No. 2,890.) Decided September 12, 1968. Leave to appeal denied December 19, 1968. 381 Mich 795.

Walter McDonald was convicted of breaking and entering in the nighttime. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey A. Koselka,* Prosecuting Attorney, for the people.

*Major Bird,* for defendant on appeal.

Levin, J. The defendant was convicted of breaking and entering in the nighttime.[1] After commission of the offense for which defendant was convicted, the legislature eliminated the statutory distinction between nighttime and daytime breaking and entering, thereupon repealing the statutory provision making *nighttime* breaking and entering

---

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).

a crime. Defendant claims that prosecutions for offenses committed under the nighttime provision before such "repeal" were barred by the legislative action. He also asserts the trial judge erred in denying his motion to suppress evidence obtained by an allegedly unconstitutional search and seizure, and, finally, that there was insufficient evidence to support the jury's guilty verdict. We find no error.

I.

In *People* v. *Lowell* (1930), 250 Mich 349, 356, the Michigan Supreme Court held that in the absence of a savings clause, the effect of an amendment of an existing statutory provision "to read as follows" was "to strike the former section from the law, obliterate it entirely, and substitute the new section in its place." The Court held the statutory amendment before it repealed the criminal law provision which it replaced, and there could be no prosecutions under the repealed provision. The Court suggested that if its ruling was not in accord with legislative intent (p 361) : "a similar situation may be avoided in the future by the enactment of a general savings statute."

The legislature responded at its next session by enacting PA 1931, No 25 (CL 1948, § 8.4a, Stat Ann 1961 Rev § 2.214), with immediate effect, providing that the repeal of any statute shall not release any penalty incurred thereunder, "unless the repealing act shall so expressly provide, and such [repealed] statute and part thereof shall be treated as still remaining in force for the purpose of instituting or sustaining any proper action or prosecution for the enforcement of such penalty."

PA 1964, No 133 (amending CL 1948, § 750.110, Stat Ann 1968 Cum Supp § 28.305), eliminating the distinction between nighttime and daytime break-

ing and entering, does not expressly relinquish any penalty incurred under the nighttime provision and, therefore, the 1964 act does not defeat prosecution of those who, before the 1964 act's effectiveness, violated the former provision by breaking and entering in the nighttime.

## II.

Officers of the Michigan State police testified that on August 15, 1964, while patrolling at 4:45 a.m. on the Tecumseh-Clinton road, north of the city of Tecumseh, Michigan, they first observed mud tracks made by the tires on defendant's car, which showed the car had emerged from the muddy parking lot of Jerry's market, and then observed the defendant's car weaving from one side of the road to another at 25–30 miles per hour. Thinking defendant driver might be intoxicated, they signalled him to stop. He ignored that order and, with the State police in pursuit, sped up to a speed in excess of 60 miles per hour, crossed US–12 against a red light and shortly thereafter collided with a parked automobile. Upon impact, both doors of the defendant's 2-door automobile and its trunk door sprang open, and the defendant fell out of the car together with quantities of cigarettes and bottles containing alcoholic beverages. There were broken bottles both within the car and the trunk as well as on the ground. Liquor was spilling out from both the car and the trunk. The defendant was thereupon arrested for violation of the motor vehicle code, and, since he appeared to be injured, he was sent by ambulance to a nearby hospital.

From outside the car the officers observed some 12 to 15 cases of liquor, a large number of cigarette cartons and individual cigarette packages and liquor

bottles. When the officers radioed for an ambulance they also put out a bulletin inquiring whether there had been any reported breaking and entering in the area which would account for the liquor and cigarettes in defendant's car, and requested the dispatch of a local police officer to stand by defendant's wrecked automobile. After the local police officer arrived, the State policemen, having loaded their car with some of the liquor, headed for the hospital to inquire concerning the defendant's condition. On the way, they stopped at Jerry's market and found a front window of the market had been broken, leaving an area large enough for a man to enter. At the hospital it appeared the defendant was not seriously injured and he was taken by the police officers to a place of incarceration. They then returned to the scene of the collision. In the meantime, the owner of Jerry's market had been called; he reported shortly after 5:30 a.m. that his place of business had, indeed, been broken into and all his cigarettes and a large portion of his liquor taken. The State policemen then made an inventory and took possession of all the liquor and cigarettes at the scene of the collision.

In our consideration of plaintiff's claim that the stolen goods seized by the police should have been excluded because obtained in violation of the Fourth Amendment, as applied to the States through the Fourteenth Amendment, of the United States Constitution,[2] and of the applicable Michigan constitutional provision,[3] we have considered decisions of the United States Supreme Court as well as those of our own Supreme Court because, no doubt, despite the forebodings expressed by the dissenters in *Cooper* v. *California* (1967), 386 US 58 (87 S Ct

[2] *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933).

788, 17 L Ed 2d 730), *rehearing denied* 386 US 988 (87 S Ct 1283, 18 L Ed 2d 243), Federal standards govern here, and not a "watered-down version" of the Fourth Amendment.[4]

The constitutional protection is against unreasonable searches and seizures, against general searches, and in particular against unreasonable invasions of the individual's privacy.

It is contemplated that ordinarily search and seizure will follow the issuance of a proper search warrant upon a showing of probable cause. However, the Constitutions do not prohibit all warrantless searches. Where a warrant has not been obtained, the validity of the search depends on the law's appraisal of the reasonableness of the search, only unreasonable warrantless searches and seizures being barred. Searches, incident to a lawful arrest,[5]

---

[3] Const 1963, art 1, § 11.

[4] In *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653), the court observed that it had held the guarantees of the First Amendment, the prohibition of unreasonable searches and seizures of the Fourth Amendment, and the right to counsel guaranteed by the Sixth Amendment (p 10): "are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against Federal encroachment. * * * The court thus has rejected the notion that the Fourteenth Amendment applies to the States only a 'watered-down, subjective version of the individual guarantees of the bill of rights.'"

[5] See *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777), recognizing that when an accused person is lawfully arrested the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime, but holding that evidence obtained in that case in a search of an automobile several hours after the defendants' arrest on vagrancy charges could not be used against them on a charge of conspiring to rob a federally insured bank (p 368):

"The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy. * * * We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car

or following a hot pursuit[6] for instruments used in the commission of crime, its fruits, contraband and means of escape, have been held to be reasonable. But that does not mean every search incident to an arrest or following a hot pursuit is justified.

In *People* v. *Gonzales* (1959), 356 Mich 247,[7] the defendant had been lawfully arrested for violation of the motor vehicle code, driving with one headlight burning. The Court stated that a lawful arrest does not automatically render constitutional any contemporaneous search and seizure, the constitutional test being whether (p 253) "under all the circumstances the search is 'unreasonable.' " In *Gonzales,* a search of the car following arrest revealed a concealed pistol. Appraising the search's reasonableness, the Court was satisfied there was no intention of incarcerating the driver because of the motor vehicle code violation, and that (p 255):

"There were no fruits of the traffic offense to search for, nor any need to search for the means by which it had been committed. And since no further detention was contemplated, there was no

without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

Here, unlike *Preston,* there was no search.

[6] See *Warden, Maryland Penitentiary* v. *Hayden* (1967), 387 US 294 (87 S Ct 1642, 18 L Ed 2d 782). The defendant had been convicted by a State court of armed robbery. The question presented was whether items of clothing seized during a search of his home, which the police entered shortly after the commission of the offense, were admissible evidence. The court held that under the circumstances of the case "the exigencies of the situation" made the course adopted by the police imperative. Separately concurring, 2 justices observed that the clothing was "pertinent to identification of the person hotly pursued as being, in fact, the person whose pursuit was justified by connection with the crime." The court held admissible evidence incriminatory of the crime for which the pursuit was undertaken despite the fact the search was without a warrant. Here the pursuit was not for breaking and entering, but for investigation of possible violation of the motor vehicle code.

[7] Similarly, see *People* v. *Zeigler* (1960) 358 Mich 355, 362; *People* v. *Lee* (1963), 371 Mich 563, 567.

need to search for weapons or other means of possible escape from custody."

The defendant argues *Gonzales* applies here, since he was stopped because of a possible motor vehicle code violation, not because of any belief a felony had been committed. He asserts there was no justification for a search, there being no fruits of the driving offense for which to search. Defendant's argument presupposes there was a search. However, as in *People* v. *Kuntze* (1963), 371 Mich 419, 425, here the State police officers perceived without entrance or search the presence of the large quantities of cigarettes and liquor in and around the defendant's car.

In *Harris* v. *United States* (1968), 390 US 234, 236 (88 S Ct 992, 19 L Ed 2d 1067, 1069), evidence plainly visible and not discovered as the result of a search was held admissible:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view, are subject to seizure and may be introduced in evidence."[8]

Here, there was no intrusion upon the defendant's privacy. That he had been transporting large quantities of both liquor and cigarettes would have been apparent to anyone who looked through the windows or opened doors and trunk of the defend-

[8] Harris' automobile was seen leaving the scene of a robbery, the car was traced and Harris arrested as he entered it near his home. The car was impounded and taken to headquarters and later a registration card belonging to the robbery victim was found during the course of an examination of the car by the police pursuant to a police regulation requiring "search" of impounded automobiles "to remove all valuables." The court declined to consider whether evidence found as a result of a search under a police regulation would be admissible, because according to the finding of the trial court the discovery of the evidence was (p 236): "not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.

"Once the door had lawfully been opened, the registration card with the name of the robbery victim on it, was plainly visible."

ant's car.  It was unnecessary for the police to invade the defendant's privacy in order to discover there might be more to the matter at hand than an erratic driving pattern on the part of an elderly man in the early hours of the morning.  We emphasize the absence of any invasion of defendant's privacy before discovery of the evidence sought to be suppressed because the gist of the protection afforded by the Fourth Amendment, as it has been interpreted and applied by the United States Supreme Court, is protection of the individual from unreasonable invasion of privacy.[9]

Although the defendant was not originally booked for breaking and entering, and was at first held for a motor vehicle violation, the conduct of the police in seizing the cigarettes and liquor without a warrant and the justification therefor must be measured against their entire knowledge, all the facts and circumstances of which they were aware, not by a technicality, the happenstance they chose originally to charge the defendant for a crime other than the one of which he was ultimately convicted.[10]

Mr. Justice Douglas separately concurred, stating the car was lawfully in police custody and the police were responsible for protecting the car, and the incriminating evidence was discovered while they were engaged in the performance of their duty to protect the car "and not engaged in an inventory or other search of the car."

[9] "We have recognized that the principal object of the Fourth Amendment is the protection of privacy rather than property, and have increasingly discarded fictional and procedural barriers rested on property concepts." *Warden, Maryland Penitentiary* v. *Hayden*, *supra*, p 304.  Similarly, see Mr. Justice Douglas' dissent at p 312.

See, also, *People* v. *Zeigler*, *supra*, pp 363, 364, where the Court observed that the law of searches and seizures, as revealed in the decisions of the United States Supreme Court, "is the product of the interplay of the Fourth Amendment's guaranty against unreasonable search and seizure and the Fifth Amendment's guaranty that no person shall be compelled in any criminal case to be a witness against himself, its dual purpose being to protect the privacy of the individual and to protect him against compulsory production of evidence to be used against him."

[10] Compare *West* v. *State* (1968), 221 Tenn 178 (425 SW2d 602), where the defendant was booked for vagrancy and convicted of burglary in part on evidence seized when he was arrested.

Without a search, the police saw evidence which aroused their suspicions. Their suspicions were confirmed within the hour, and they proceeded properly in seizing that evidence, the apparently stolen goods.

True, the police officers seized some of the liquor when they may have merely suspected a felony might have been committed. However, most of the property was seized only after those suspicions were confirmed. The evidence taken before and after confirmation that a felony had in fact been committed was indistinguishable in evidentiary weight. This makes it unnecessary for us to consider whether property "seized" *without a search* on the basis of suspicion only should be suppressed and held inadmissible.[11]

There was no error in denying the motion to suppress and admitting the evidence.

## III.

The defendant is correct in saying that there is authority that unexplained possession of property recently stolen, unaccompanied by other facts or circumstances indicating guilt, will not sustain a conviction for *breaking and entering,* even though

---

[11] See 47 Am Jur, Searches and Seizures, § 20. Compare *State* v. *Miller* (1922), 121 Wash 153, 154 (209 P 9) quoted in *People* v. *Kamhout* (1924), 227 Mich 172, 187.

Here a search for *the* bottle of liquor the defendant may have been drinking would have been consistent with the original premise on which the officers acted, namely, that the defendant had been drinking. However, the officers could not have supposed defendant was drinking from the sealed bottles that were seized.

Compare *Warden, Maryland Penitentiary* v. *Hayden, supra,* pp 298–300, where the court held admissible identifying clothing found and seized following a warrantless search for weapons and fruits of the crime. As to the seizure of articles beyond the scope of a warrant, compare *People* v. *Preuss* (1923), 225 Mich 115, 120, with *People* v. *Alicki* (1948), 321 Mich 701.

Generally, see Annotation: Lawfulness of search of motor vehicle following arrest for traffic violation, 10 ALR3d 314.

it is some evidence that the possessor is guilty of *theft*. See *People* v. *McDonald* (1910), 163 Mich 552, 555.[12] In our opinion, there were presented to the jury additional facts and circumstances from which it could have found the defendant broke and entered Jerry's market.

The muddy tire tracks showed the defendant had been in the parking lot adjoining Jerry's market just before he was observed by the State police at 4:45 a.m. When observed, he was transporting property later identified as that of the owner of Jerry's market. Thus, in addition to the evidence that defendant had possession of the stolen cigarettes and liquor, there was also evidence placing the defendant at the scene of the breaking and entering.[13] This was sufficient to justify sending the case to the jury on nighttime breaking and entering. See *People* v. *Wood* (1894), 99 Mich 620.

Affirmed.

T. G. KAVANAGH, P. J., and SULLIVAN, J., concurred.

---

[12] See authorities collected in 2 Wharton's Criminal Law and Procedure, § 411.

[13] At 2:45 a.m., approximately 2 hours before the State police spotted McDonald's car, a local policeman while patrolling in the area looked over the defendant's car, a strange car in this small town, while it was parked in the rear of a bowling alley. This was a half mile from Jerry's market. There was no liquor or cigarettes in the car at the time. The same policeman also testified he "swung around" Jerry's market and the window of Jerry's market was not broken at that hour.