PEOPLE *v.* SAMMY MARTIN

1. CRIMINAL LAW—COMPETENCY TO STAND TRIAL—INSANITY DEFENSE.
   Although Michigan does have a statute governing psychiatric examination when the defendant's competency to stand trial is at issue, there is no provision to aid the prosecution where defendant's sanity at the time of the commission of the crime is at issue (MCLA § 767.27).

2. CRIMINAL LAW—INSANITY DEFENSE—COURT APPOINTED EXAMINATION.
   The majority of jurisdictions, which lack express statutory authorization permitting a trial court to order a psychiatric examination recognize the inherent right of a court to order

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 31, 48.
[3] 21 Am Jur 2d, Criminal Law §§ 48, 49, 357, 365.
[4, 5, 7] 21 Am Jur 2d, Criminal Law §§ 48, 53.
[6] 21 Am Jur 2d, Criminal Law § 48.

a psychiatric examination when an accused files notice of insanity and hold such an examination does not *per se* violate the Fifth Amendment rights of the accused.

3. Criminal Law — Court-Ordered Psychiatric Examination — Right Against Self-Incrimination — Purpose of Examination.

Compelling a defendant to submit to a psychiatric examination does not *per se* violate his constitutional right against self-incrimination, for the purpose of such an examination is not to wrest evidence from a defendant to prove his guilt, but rather to ascertain whether the defendant can be held criminally responsible.

4. Criminal Law — Court-Ordered Psychiatric Examination — Psychiatrists' Testimony — Duty of Court.

It is incumbent upon the court, where the accused is ordered to submit to an interview conducted by court appointed psychiatrists, to limit the resulting testimony to the expression of an opinion of the accused's sanity.

5. Criminal Law—Court-Ordered Psychiatric Examination—Insanity Defense—Psychiatrists' Questions—Admissions.

Questions, in the course of a court-ordered psychiatric examination, relating to the commission of the crime are not improper, if they are necessary for forming an opinion regarding the accused's mental condition, but any inculpatory statements by the defendant during the interview are not competent as admissions on the issue of his guilt.

6. Criminal Law—Courts—Psychiatric Examination.

A trial court has the inherent right to order a psychiatric examination and such examination does not *per se* violate defendant's Fifth Amendment rights.

7. Criminal Law—Insanity Defense—Court-Ordered Psychiatric Examination—Appeal and Error.

Trial court did not err in compelling the defendant to submit to a psychiatric examination, at which defense counsel could be present, and allowing the state's psychiatrists to testify as to their findings where the examination and the resulting testimony dealt only with the question of the defendant's sanity.

Appeal from Wayne, John M. Wise, J. Submitted Division 1 May 4, 1970, at Grand Rapids. (Docket No. 6,233.) Decided September 28, 1970. Leave to appeal granted February 12, 1971. 384 Mich 806.

Sammy E. Martin was convicted of murder in the second degree. Defendant appeals. Affirmed.

*Farnk J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Harry N. Grossman,* for defendant on appeal.

Before: FITZGERALD, P. J., and J. H. GILLIS and O'HARA,* JJ.

FITZGERALD, P. J.   Sammy E. Martin, defendant in the present case, was tried and convicted of murder in the second degree and sentenced to serve 20 to 30 years in prison.   The facts surrounding the commission of the crime are not disputed, for defendant concedes that he shot the victim on January 6, 1968, and that she died as a result thereof.   At trial, defendant filed a notice of intention to claim insanity as a defense, stating that testimony would be introduced to establish his insanity at the time the offense was committed.

Shortly thereafter, and in response to the notice, the people petitioned the court to appoint a psychiatrist to examine defendant.   A hearing was had and despite objections, the motion was granted and two psychiatrists were appointed.   Subsequently, during the course of the trial, testimony elicited from the psychiatrists indicated that defendant was

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sane at the time of the commission of the crime. Defendant now appeals the conviction.

The alleged error which is presented concerns the decision of the trial court to order a psychiatric examination of defendant on motion of the people and in subsequently permitting the psychiatrists to testify at trial. Defendant argues that in the absence of statutory mandate, the court had no inherent right to order the examination. He contends that under the circumstances, the examination violated his Fifth Amendment rights and therefore the expert testimony should have been prohibited.

The issue with which we are faced on this appeal was recently discussed and decided by this Court in *People* v. *Early* (1970), 25 Mich App 363. However, the facts of the *Early* decision and those of the case at hand are distinguishable at least to the extent that *Early* is silent as regards actually directing the defendant to submit to the court-ordered interview. It is in light of this that we shall endeavor to elaborate so the issue may be laid to rest.

Prior to this Court's recent ruling, and despite the fact that Michigan did have a statute governing psychiatric examinations when competency to stand trial was at issue,[1] no provision was made to aid the prosecution where insanity was claimed to exist at the time of the commission of the crime. Many states have enacted legislation which provides for the psychiatric examination in both instances. Those jurisdictions which are lacking express statutory authorization are split in their determination of the issue.[2] However, the majority appear to rec-

---

[1] MCLA § 767.23a (Stat Ann 1970 Cum Supp § 28.966[11]).

[2] The minority view is summarized in *State* v. *Olson* (1966), 274 Minn 225 (143 NW2d 69), where the court ruled that in the absence of an enabling statute, a court lacks the inherent power to require a defendant to submit to the examination. See, also, *French* v. *District Court* (1963), 153 Colo 10 (384 P2d 268).

ognize the inherent right of a court to order a psy-
chiatric examination when an accused files notice of
insanity.  It is uniformly held within these states
that such an examination does not *per se* violate the
Fifth Amendment rights of the accused.

A review of the applicable cases from other juris-
dictions discloses *State* v. *Mulrine* (1962), 55 Del 65
(183 A2d 831), which was decided by the Delaware
Supreme Court.  In its opinion, the court did not
specifically address itself to the constitutional issue
of directing the defendant to actively participate in
an examination, but it did hold that the lower court
possessed an inherent right to order a psychiatric
examination even in the absence of statutory author-
ity.  The basis of this decision appears to lie in the
apparent absurdity of allowing psychiatric examina-
tion and testimony on defendant's behalf once the
defense of insanity is raised, while depriving the
people of the same opportunities through their own
experts.

The case of *State* v. *Phillips* (1967), 245 Or 466
(422 P2d 670) goes one step further by addressing
itself to a consideration of the possible Fifth Amend-
ment infringements in directing a defendant who
pleads not guilty by reason of insanity to submit to a
psychiatric examination.  In ruling that there was
no constitutional violation, the court, quoting at
length from *State* v. *Grayson* (1954), 239 NC 453
(80 SE2d 387), reasoned:

" 'The constitutional privilege against self-
crimination in history and principle seems to relate
to protecting the accused from the process of extract-
ing from his own lips against his will an admission
of guilt, and in better reasoned cases it does not ex-
tend to the exclusion of his body or of his mental con-
dition as evidence when such evidence is relevant

and material, even when such evidence is obtained by compulsion.'

"If the rule were otherwise there would be no way for the state to rebut a plea of insanity after the defendant had put his mental condition in question by such a plea. No error was committed in allowing the defendant to be examined by the state's psychiatrist nor in permitting him to testify as to his opinion of defendant's mental condition at the time of the crime."

Similarly, in *United States* v. *Albright* (CA 4, 1968), 388 F2d 719, the Court found that United States District Courts have the inherent power to order such examinations. The Court further held that compelling a defendant to submit to an examination in an appropriate case does not *per se* violate his rights against self-incrimination. See *Alexander* v. *United States* (CA 8, 1967), 380 F2d 33, and *Pope* v. *United States* (CA 8, 1967), 372 F2d 710.

The *Albright* decision also endeavored to elaborate the purposes of the examination and to establish criteria for protecting the rights of the accused.

"The manifest purpose of the examination in this case was, and the proper objective of a mental examination in any criminal case where a defendant's sanity is in issue should be, to obtain knowledge not about facts concerning defendant's participation in the criminal acts charged, but about facts concerning a defendant which are themselves material to the case. Cf. *United States* v. *Wade* (1967), 388 US 218, 219, 222 (87 S Ct 1926, 18 L Ed 2d 1149). The purpose is not to prove by evidence wrested from a defendant whether he is guilty as charged but, rather, to prove whether a defendant possesses the requisite mentality to be guilty as charged, assuming that his guilt is otherwise established, or whether, legally, he cannot be held criminally responsible, irrespective of what other proof may establish he has done."

Despite the fact that a majority of those jurisdictions addressing themselves to the precise question now facing this Court have ruled that there exists an inherent right to order psychiatric examinations under appropriate circumstances, limits are placed upon the latitude of the examination as well as the resulting expert testimony in order to avoid clear violation of the right against self-incrimination. If the accused is ordered to submit to an interview conducted by court appointed psychiatrists, it is incumbent upon the court to insure that the resulting testimony be limited to the expression of an opinion of the accused's sanity. Any inculpatory statements made by the defendant during the interview are not competent as admissions on the issue of his guilt. However, in the course of the psychiatric examination, questions relating to the commission of the crime are not improper, if in the opinion of the expert such questions and the related answers are necessary in the formulation of an opinion regarding the accused's mental condition. In *State* v. *Whitlow* (1965), 45 NJ 3 (210 A2d 763), the court stated:

"It would be most anomalous to say that a defendant may advance the defense of insanity, have himself examined by his own experts and then invoke the constitutional guarantees against self-incrimination for the purpose of preventing examination by the State. *State* v. *Myers* (1951), 220 SC 309 (67 SE 2d 506). It would be a strange doctrine, indeed, to permit a person charged with crime to put in issue his want of mental capacity to commit it, and in order to make his plea invulnerable, prevent all inquiry into his mental state or condition. *State* v. *Cerar* (1922), 60 Utah 208 (207 P 597). To allow the accused to obtain his own expert, and after a private and unlimited conference with him and examination by him, to plead insanity, and then put forward the privilege against self-incrimination to

frustrate like activities by the prosecution is to balance the competing interests unfairly and disproportionately against the public."

In light of this discussion of the law as adopted in numerous jurisdictions, including Michigan, as well as the gravity of the problem involved, we reiterate that a trial court has the inherent right to order a psychiatric examination, and under the facts and circumstances of the present case, such a decision was proper. In addition, such an examination does not *per se* violate the defendant's Fifth Amendment rights. It is also stressed that the underlying purpose of the examination is not to obtain facts concerning defendant's participation in the crime for the use of the prosecution, but to obtain relevant data germane to the question of defendant's sanity.

In the present case, the trial court compelled defendant to submit to an examination and the court indicated that defense counsel could be present during the interview. The record contains evidence of the fact that the examination and related testimony dealt only with the question of defendant's sanity. It seems clear that in the absence of any case or statutory prohibition, no error was committed in allowing the state's psychiatrists to testify as to their findings.

Affirmed.

All concurred.