PEOPLE v SCHRANTZ

1. Searches and Seizures—Without Warrant—Reasonableness.

The legality of a search conducted without a warrant depends upon the law's appraisal of its reasonableness, and although a search warrant is preferred its absence does not per se make a search unreasonable.

2. Searches and Seizures—Without Warrant—Probable Cause.

Entry by police into a house without a search warrant was lawful and justified where a 48-hour commitment order for the defendant had been authorized, the police knew that screams had been heard from the house, neighbors had not seen or heard from the defendant's wife all day, the defendant, who was having domestic difficulty with his wife, was in the house, the kitchen was in disarray, the defendant had a past history of violent action, and in defendant's car were rope, surgical tape and a handgun case; the knowledge of these facts on the part of the officers gave them probable cause to believe that a crime had been or was being committed in the house.

3. Searches and Seizures—Without Warrant—Plain View—Evidence—Suppression.

Refusal to suppress evidence obtained by police during a search of a defendant's house without a warrant was not error where the police had probable cause to believe that a crime had been or was being committed in the house and where, upon entry into the house, the police had to subdue the defendant as he was attempting to draw a gun; the officers had the right, if not the duty, to assure themselves that there were no injured persons on the premises and the evidence complained of was in the plain view of the officers who had a legal right to be where they were.

4. Criminal Law—Insanity Defense—Psychiatric Examination—Inculpatory Statements—Constitutional Law—Self-Incrimination.

A defendant who pleads not guilty by reason of insanity is not

deprived of his Fifth Amendment privilege against self-incrimination by being required to submit to an examination by the prosecution's psychiatrist nor by allowing the psychiatrist to testify as to his findings; however, inculpatory statements made by a defendant during the course of that examination may not be admitted into evidence to prove the defendant's guilt (US Const, Am V).

5. CRIMINAL LAW—INSANITY DEFENSE—PSYCHIATRIC EXAMINATION—
   INCULPATORY STATEMENTS—DISCRETION—INSTRUCTIONS TO JURY.

It was not error to allow the prosecution's psychiatrist to testify as to statements concerning the crime made to him at a court-ordered psychiatric examination by a defendant claiming insanity as a defense because the decision to allow such testimony lies in the sound discretion of the trial judge, and where the proffered testimony was the basis upon which the psychiatrist had formed his opinion and the jury was properly instructed that the testimony could only be used in determining the defendant's sanity and not his guilt, there was no abuse of such discretion.

Appeal from Wayne, Neal Fitzgerald, J. Submitted Division 1 June 8, 1973, at Detroit. (Docket No. 13177.) Decided October 31, 1973.

Donne Michael Schrantz was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Martin I. Reisig,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and V. J. BRENNAN and WALSH,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

V. J. BRENNAN, J. Defendant, Michael Schrantz, appeals as of right from his conviction by a jury in the Wayne County Circuit Court of murder in the first degree (MCLA 750.316; MSA 28.548). Defendant argues that several alleged errors require reversal of his conviction.

I.

At the time of the alleged offense, defendant and his wife were in the process of obtaining a divorce. In an agreement with his wife, defendant surrendered his right to possession of a house they jointly owned. On August 28, 1970, defendant was observed driving past the house and that night was observed standing by some bushes at the side of the house. Fifteen minutes later a scream was heard coming from the house by two neighbors and the police were summoned. Upon their arrival, the police observed a screen off the front window of the home and a Mercury automobile parked in the driveway. They knocked on the front door but initially received no response. After repeated knocking, a female voice responded that her daughter was sick and that there was nothing the police could do. The officers stated that the woman sounded as if she was crying and that she seemed upset. Believing that something was amiss, the police kept the house under surveillance. At 6 a.m., while driving past the house, the police noticed a white Cougar parked in the driveway. A license check was made on the car which revealed that it was owned by the defendant. On the afternoon of August 29, 1970, neighbors again called the police and asked them to see if everything was all right at the Schrantz home. At this time one lady told the police that she was certain that Mrs. Schrantz was home but that she repeatedly failed

to answer her telephone. A further license check of both cars revealed that about a month earlier defendant had filed a missing report on his wife which indicated the existence of marital discord between them and contained the statement that the wife had left, taking the Mercury car and several guns with her.

By this time several police officers recalled that the defendant, about five years earlier, had driven his wife out of their home with a gun. The police also recalled that defendant was taken into custody under a 48-hour commitment order (MCLA 330.19; MSA 14.809) only after the use of tear gas had become necessary.

Police officers were again dispatched to the home but no one responded to repeated knockings on the door. The police left and returned about an hour and a half later and proceeded to knock on all the windows and doors of the house. At this time, they observed general disarray in the kitchen and surgical tape, rope, and a long handgun case inside the Cougar. The police chief was informed of these developments and a police officer was then sent to obtain a search warrant. The judge before whom the officer appeared "disqualified" himself from considering the matter because he was involved in the Schrantz's divorce action. He referred the policeman to the prosecutor's office. The police officer contacted an assistant prosecutor who authorized a 48-hour commitment order under MCLA 330.19; MSA 14.809.

During the time the police officer was attempting to procure a search warrant, other officers were still attempting to obtain some reply from within the house. Repeated knocking finally elicited a response from a male who adamantly refused to open the door stating that he was in

insulin shock and that his wife and daughter were asleep. When the police officer arrived with the commitment order and after admittance was again refused, they broke into the house. Defendant was subdued in the living room as he attempted to draw a gun from his pocket. Police officers then went through the house and found both the wife and daughter dead of gunshot wounds.

At the trial defendant sought to have all evidence obtained as a result of the entry into the house suppressed on the basis that it was procured in violation of his Fourth Amendment rights. The trial judge denied defendant's motion to suppress the evidence holding that defendant's Fourth Amendment rights were not violated because the officers had probable cause to believe that a crime had been or was being committed in the house at the time and because exigent circumstances justified their actions.

Defendant appeals, contending that the evidence should have been suppressed for two reasons: (1) the police did not comply with the statutory requirements of the 48-hour commitment order and take him to a medical facility but rather used the commitment order as if it was a search warrant; and, (2) the evidence was procured by a search of the whole house without a warrant or consent.

Defendant's contention that the warrantless search of the house violated his rights under the Fourth Amendment is without merit. Although a search warrant is preferred, its absence does not per se make the search unreasonable. The legality of a search conducted without a warrant depends upon the law's appraisal of its reasonableness. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972); *People v Cook,* 24 Mich App 401; 180 NW2d 354 (1970); *People v McDonald,* 13 Mich App 226; 163 NW2d 796 (1968).

In the case at bar the police knew that screams had been heard from the house, that the neighbors had not seen or heard from Mrs. Schrantz all day, that the defendant, who was having domestic difficulty with his wife, was in the house, that the kitchen was in disarray, that defendant had a past history of violent action, and that in defendant's car were rope, surgical tape, and a handgun case. The knowledge of these facts on the part of the officers gave them probable cause to believe that a crime had been or was being committed in the house. Their entry into the house under these circumstances, coupled with the fact that a commitment order had been authorized, was lawful and justified. Similarly, knowledge of the above facts, plus the fact that defendant was subdued as he was attempting to draw a gun from his pocket, gave the officers the right, if not the duty, to assure themselves that there were no injured persons on the premises. *United States v Barone,* 330 F2d 543 (CA 2, 1964). It was in performance of this task that the officers discovered the evidence complained of on this appeal. The evidence was not obtained through a full-blown search. Indeed, the investigation made here was not even an attempt to procure evidence but rather to ascertain whether any person on the premises was in need of aid. Under these circumstances we hold there was no violation of defendant's Fourth Amendment rights and that error was not committed by the trial judge's refusal to suppress the evidence so obtained. The evidence was in plain view of the officers who had a legal right to be where they were. *People v Bennett,* 46 Mich App 598; 208 NW2d 624 (1973); *People v Gray,* 37 Mich App 189; 194 NW2d 545 (1971). We attach no significance to the fact that the officers did not take defendant to a medical facility after they had arrested him.

## II.

The defendant, after raising the defense of insanity, was ordered to submit to a psychiatric examination to be administered by Dr. Bruce Danto, a psychiatrist for the prosecution. The defendant sought to have his counsel present during the examination but his motion in this regard was denied. Exclusion of others is common practice for many reasons, one being it is difficult for a psychiatrist to effectively exhaust the complete area of inquiry of mental state and receive the probably guarded but relaxed answers when others are present. A complete record is made of these consultations and is available to counsel before trial to examine if he wishes. During the course of the interview, Dr. Danto questioned defendant about the alleged offense and the circumstances surrounding it and made notes of the defendant's responses thereto. At the trial, over defendant's objection, Dr. Danto was allowed to testify as to statements regarding the offense made by the defendant during the interview. The statements were offered to show the basis upon which Dr. Danto formed his opinion. The jury was instructed by the court prior to Dr. Danto's testimony and in the court's final charge that this testimony was only to be used in determining the defendant's sanity at the time of the alleged offense and that it was not to be used in determining his guilt. The defendant did not take the stand to testify in his own behalf but did offer the testimony of a psychiatrist on the issue of his sanity at the time of the alleged offense. Defendant contends that he was denied his Fifth Amendment privilege against self-incrimination when he was ordered to submit to an examination by the prosecution's psychiatrist and then inculpatory statements made by him

during the examination were admitted into evidence over his objection.

It is clear that a defendant who raises the plea of not guilty by reason of insanity is not deprived of his Fifth Amendment privilege against self-incrimination by being required to submit to an examination by the prosecution's psychiatrist nor by allowing the psychiatrist to testify as to his findings. *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), *cert den,* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972); *People v Sammy Martin,* 26 Mich App 467; 182 NW2d 741 (1970). Our Supreme Court has also held that inculpatory statements made by a defendant during the course of that examination may not be admitted into evidence to prove defendant's guilt. *People v Stevens,* 386 Mich 579; 194 NW2d 370 (1972). The Court in *Stevens* did not, however, explicitly determine whether such inculpatory statements could properly be admitted to show the basis upon which the prosecution's psychiatrist has formed his opinion.

The cases cited by our Supreme Court in support of their decisions in *Martin* and *Stevens, supra,* are not harmonious in their resolution of the issue directly confronting us. In *Parkin v State,* 238 So 2d 817, 820 (Fla, 1970), the Supreme Court of Florida, after stating that the psychiatrist in a case such as this should not be allowed to testify as to facts and circumstances of the alleged offense learned during the interview, said:

"In other words, the Court and the State should not in their inquiry go beyond eliciting the opinion of the expert as to sanity or insanity, and should not inquire as to information concerning the alleged offense provided by a defendant during his interview; however, if the defendant's counsel opens the inquiry to collateral

issues, admissions or guilt, the State's redirect examination properly could inquire within the scope opened by the defense.

"This procedure makes available to the psychiatrist such information as he needs to form an opinion as to the ability of the defendant to tell right from wrong, without at the same time opening all information given during such psychiatric examination for use during trial unless it is opened by the defendant. This procedure also places the burden of proving guilt on the prosecution, without opportunity to require a defendant pleading insanity to incriminate himself as to guilt· in attempting to establish insanity."

The New Jersey Supreme Court, in *State v Whitlow,* 45 NJ 3, 16; 210 A2d 763, 770 (1965), however, felt that any prejudicial effect of allowing such testimony could be cured by an appropriate instruction. That Court stated:

"The difficult question is whether inculpatory statements or confessions of the accused respecting the crime charged, made during the psychiatric interview and examination may be introduced in evidence. Where it appears at the trial that the conversations with the doctors were necessary to enable them to form an opinion either as to mental capacity to stand trial (where it is in issue) or to commit the crime, such statements or confessions are admissible. Their function or probative force, however, is limited to the sanity issue and may not be used as substantive evidence of guilt."

We feel that the approach of the Court in *Whitlow* is correct. The decision to allow such testimony lies in the sound discretion of the trial judge. If he decides that the proffered testimony is the basis upon which the psychiatrist has formed his opinion and if the jury is properly instructed as to the use of such testimony then it is not error for the trial judge to allow the prosecution's psy-

chiatrist to testify as to statements made by the defendant concerning the crime which the psychiatrist used in reaching his opinion. In determining whether a defendant was sane at the time of the alleged offense a jury is often asked to believe one expert witness over another. To intelligently make such a choice the jury often must be apprised of the bases upon which the conflicting opinions were made. There is often no other way for the jury to weigh the relative merits of conflicting expert opinions. We hold that if the evidence is admitted solely to show the basis for the psychiatrist's opinion, and the jury is so instructed, there is no infringement of a defendant's rights under the Fifth Amendment. If we were to hold otherwise and decide that the scope of evidence allowed to be presented on the basis of the psychiatrist's opinion is limited to rebuttal evidence of that which the defendant has presented, we would be depriving the jury of a valuable aid in resolving conflicting testimony of expert witnesses.

In the case at bar the prosecution's psychiatrist related statements of defendant which he stated formed the basis of his opinion. The jury was instructed both at the time Dr. Danto testified and in the final charge that his testimony could only be used in determining defendant's sanity and not his guilt. Under these circumstances we hold that no error was committed in allowing Dr. Danto to testify as to statements made by defendant during the psychiatric examination.

Affirmed.

All concurred.