PEOPLE v BRISCOE

1. SEARCHES AND SEIZURES—EVIDENCE—WITHOUT WARRANT—PROBA-
BLE CAUSE—PLAIN VIEW.

Evidence which was first observed by officers when in plain
view after the officers had been admitted into a defendant's
apartment by his landlady and which was later seized under
authority of a search warrant was admissible at defendant's
trial where the officers, before entering the apartment, had
reasonable cause to believe that a felony had been committed
and reasonable cause to believe that defendant had committed
it, where the circumstances reasonably led the police to believe
defendant was in the apartment, and where the search without
a warrant was definitely limited in scope to an examination of
those areas where a person could hide in the apartment.

2. SEARCHES AND SEIZURES—EVIDENCE—SEARCH WARRANTS—RETURN
—STATUTES.

A statute requiring the officer to whom a search warrant is issued
to personally make the return on the warrant was sufficiently
complied with where the officer personally signed the return
even though another officer who seized the identical chattel
pursuant to another warrant tabulated the property seized on
his own warrant as well as the former officer's warrant and
also filled out the only receipt for the item seized and left a
copy in the defendant's apartment (MCLA 780.655).

3. SEARCHES AND SEIZURES—EVIDENCE—FRUIT OF THE POISONOUS TREE
—BURDEN—PRESERVING QUESTION.

A defendant who challenges the admissibility of evidence as a
consequence of an allegedly illegal search and alleged defects in
search warrants must prove that a substantial portion of the
case against him was a "fruit of the poisonous tree" after
establishing a primary taint due to illegal police activity; only
after he has done so is the prosecution required to show the

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 5 Am Jur 2d, Arrest §§ 26, 28.
29 Am Jur 2d, Evidence §§ 415, 531.
[4] 21 Am Jur 2d, Criminal Law § 368.

complained of evidence had independent origin, or was the product of an intervening independent act of the defendant's free will, or that the connection between the unlawful act and the evidence sought to be used has become so attenuated as to dissipate the taint; such a theory should be presented contemporaneously with a motion to suppress in the trial court and should not be raised for the first time in a new trial motion or on appeal.

4. CRIMINAL LAW—IN-COURT IDENTIFICATION—LINEUP—INDEPENDENT SOURCE.

In-court identification of a defendant was independent of an impermissible lineup identification where the evidence indicated that the illumination at the scene of the crime was good and that the witness was the "length of a dollar bill" away from defendant, the witness looked directly into the bandit's eyes and stated at the preliminary examination that she didn't think she would ever forget his eyes, and where the witness provided a reasonably detailed description of both defendant and the vehicle used to escape from the scene.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted Division 3 November 6, 1973, at Grand Rapids. (Docket No. 14351.) Decided January 15, 1974.

Jasper W. Briscoe, III, was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. Brady Denton,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Donald Ubell,* Director, of counsel), for the people.

*William F. Dillon,* for defendant on appeal.

Before: R. B. BURNS, P. J. and DANHOF and O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J. A jury convicted the defendant of armed robbery. MCLA 750.529; MSA 28.797. Sentence was fixed at from 10 to 20 years in prison. He appeals on leave granted.

The first contention is that the trial court erroneously admitted a hat in evidence which should have been suppressed as the product of an illicit search. He claims that the officers illegally gained ingress to defendant's premises and only then observed the presence of certain items which could justify the issuance of search warrants. Any evidence thereafter seized pursuant to the warrants should have been excluded under the fruit of the poisonous tree doctrine as a product of that initial search.

The pertinent facts appear as follows. On January 30, 1970, two female employees of the Gase Baking Company in Saginaw were on duty when a young black man came into the store. He had on a *black hat* and was wearing black motorcycle-type boots. He came up to the counter, pointed his gun at them, and demanded the money in the cash register. The weapon was a chrome-colored handgun with a black handle. When one of the women handed the money over to the holdup man she was "about the length of a dollar bill away from him". After the man left the store, she ran to a window and watched him enter an adjacent parking lot. The man drove off in a 1968–1969 Pontiac Firebird or Chevrolet Camaro with a black top and an olive or avocado-green body. Then the ladies called the police and gave the officers who responded a description of the robber.

Approximately a week later, on February 6, 1970, Detective Michael Gough of the Saginaw Police Department received an alert broadcast over his police radio with respect to a robbery

committed at Muir's drug store in Fort Saginaw Mall (outside the city proper). The broadcast stated the license number of the getaway vehicle in which the robber fled and went on to note that it was a black-over-green Pontiac Firebird. Officer Gough proceeded to an apartment at 622 North Jefferson in Saginaw where the defendant resided. Simultaneous with his own arrival was that of two uniformed officers. A vehicle fitting the description of the robber's car was parked in the driveway.

Upon being admitted to the premises by the landlady, a Mrs. Lively, the officers asked if defendant Jasper Briscoe was at home. She had seen defendant 20 to 25 minutes earlier but wasn't sure if he presently was in. She stated he might be at an adjacent address across the street. The officers received no response at that address. On their return to 622 North Jefferson they informed Mrs. Lively that they wanted defendant for investigation of armed robbery and sought permission to look through the house. Permission was granted. When she escorted them to defendant's room they saw the door was partially open and the room dark. After she turned on the light, Officer Gough entered the room and immediately noticed a tan-colored tam and a black hat or cap on a dresser, and a dark-colored jacket lying on a chair. He recalled the description of the robber at Fort Saginaw Mall had stated the holdup man was wearing a tan-colored tam and a dark jacket. His search of the room was limited to examining places where a fugitive could conceal himself. No effort was made to open drawers or otherwise "shake down" the premises. A search was made of the rest of the house and at this time Detective Edward Mitchell arrived on the scene.

Officers Gough and Mitchell left the apartment

wherein defendant resided in order to examine the 1968 Pontiac Firebird parked in the driveway at the same address. Officer Gough knew about the similarity between this vehicle and the description given of the getaway car used in the Gase Baking Company robbery on January 30. As the two men exited the premises a cab drove by and stopped to permit a passenger to alight. It was the defendant. Officer Mitchell took him into custody for investigation of the armed robbery committed outside the City of Saginaw earlier that day.

Following their return to the police station, the officers obtained three search warrants. One of the warrants which authorized a search of defendant's car is not pertinent to the issues on appeal. Apparently the warrant obtained by Detective Mitchell principally listed chattels which he expected to find on the premises that were related to the Fort Saginaw Mall incident. Among other things it enumerated to be searched for and seized as evidence was one black hat or cap. While the warrant obtained by Detective Gough was concerned with the robbery committed at the Gase Baking Company, it similarly recited, as evidence to be seized, one black hat.

All three of the warrants were simultaneously executed. Detective Mitchell actually seized the black hat and made out a receipt for the property seized in Gough's presence and left a copy of the document in defendant's room. The black hat was photographed on the dresser before he picked it up. Officer Mitchell also listed the hat on the return for the Gough warrant. Detective Gough then signed the return and Mitchell made personal return to the court on Officer Gough's warrant as well as his own.

The defense moved to suppress evidence seized

pursuant to the Mitchell warrant on various grounds. The prosecutor stipulated that he would not introduce any evidence that was obtained under this warrant. But he thought the same evidence, to wit, one black hat, was admissible under the Gough warrant. An objection to the admission of anything seized by Officer Gough was made on the twofold ground that the officer had not personally made the return on his warrant and that the pen used to sign Gough's signature on the return was unlike the instrument which listed the item seized. After noting that the stipulation precluded the state from introducing any evidence taken under the Mitchell warrant, the trial court observed that the return on the other warrant was in fact part of the court file. Further cognizance was taken of the fact that any discrepancy in the signature on the return would relate to credibility or weight rather than admissibility of the hat as such.

During the trial proper when the people sought to introduce the black hat and a photograph of that chapeau showing it resting in defendant's apartment, defense counsel objected to admission of the hat solely on the ground that the failure of Officer Gough to personally make the return on the warrant violated MCLA 780.655; MSA 28.1259(5).[1] Holding that there was no violation of defendant's constitutional rights and that there was sufficient compliance with the statute, the court held both the hat and the photograph of same were admissible.

As aforesaid, defendant was found guilty of robbing the Gase Baking Company.

On appeal, different counsel was appointed at

---

[1] Defendant abandoned an initial objection to admission of the photograph, limiting his objection to the hat itself.

the request of defendant. He promptly filed a motion for new trial alleging *inter alia* as grounds therefor: that the police lacked probable cause to obtain a search warrant prior to their admission to defendant's lodgings, and that knowledge obtained by an illegal entry cannot subsequently form the basis for issuance of a search warrant; hence the fruits of the illegal search should be suppressed. An order was entered denying the motion and counsel raises essentially the same arguments on defendant's delayed appeal.

The officers clearly had "reasonable cause to believe that a felony [had] been committed and reasonable cause to believe that [defendant had] committed it". MCLA 764.15(d); MSA 28.874(d). In addition to a description of the perpetrator of the robbery at Fort Saginaw Mall they had the license number and a detailed description of the vehicle which the robber drove away in. Incontestably, the car was parked in the driveway beside the apartment where defendant resided. Defendant had been seen on the premises shortly before the officers' arrival even though the landlady didn't specifically know if defendant was at home. A radio communication from the police dispatcher indicated that the State Police believed defendant was still in the house. Additionally, the door to defendant's room was partially open and the lights off. These circumstances reasonably led the police to believe defendant was at home. That belief was on this record a reasonable one. The existence of probable cause to arrest defendant and there being a reasonable basis to infer that defendant was at home means that the officers could lawfully enter on the premises. Moreover, the search was definitely limited in scope to an examination of those areas where a person could hide in the apartment.

Nowhere is there any serious indication that entrance was gained as a "pretext" whereby a random search for evidence could be carried out. Since the officers were legitimately admitted to defendant's abode they were not obligated to ignore the highly visible presence of certain personal property which substantiated their prior belief with regard to defendant's complicity in the offense committed earlier that day. This evidence comes within the "plain view doctrine" which Michigan courts have repeatedly applied. See *People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963); *People v McDonald,* 13 Mich App 226; 163 NW2d 796 (1968).

As heretofore stated, defendant's trial counsel sought to suppress only evidence which was seized pursuant to the search warrant obtained by Detective Mitchell. Upon a stipulation by the prosecutor that the people would not seek to introduce any evidence garnered pursuant to that warrant, defendant ultimately limited his objection to the warrant obtained by Detective Gough to that officer's alleged failure to comply with the dictates of MCLA 780.655, *supra,* by not personally making the return on the warrant. This objection goes more to form than substance since the black hat was seized pursuant to both warrants even though Detective Mitchell took physical custody of all personal property seized. Most likely for this reason he filled out the receipt for the hat and other items and left a copy in defendant's room. No real purpose would be served by Detective Gough doing the same act merely because he also listed the hat as seized on his return too. Nor do we think the error, if any, in Detective Mitchell filing the tabulation of property seized on his own warrant as well as Gough's warrant would be reversibly erro-

neous under MCLA 780.655, since Officer Gough personally signed the return and left the act of physical delivery to a fellow officer who had seized the identical chattel.

Now with respect to those objections concerning the circumstances under which the officers gained admittance to defendant's room and alleged defects in the warrants raised for the first time in the new trial motion and now on appeal, *People v Willis,* 46 Mich App 436, 439; 208 NW2d 204, 205–206 (1973), says it all.

"This argument, an adaption of the 'fruit of the poisonous tree doctrine' was not raised at or before trial. In *Nardone v United States,* 308 US 338, 341; 60 S Ct 266, 268; 84 L Ed 307, 312 (1939), certain burdens were placed on defendants raising such a theory. The defendant must 'prove that a substantial portion of the case against him was a fruit of the poisonous tree' after establishing a primary taint due to illegal police activity. Only after he has done so is the prosecution required to show the complained evidence had independent origin, or was the product of an intervening independent act of the defendant's free will, or that the connection between the unlawful act and the evidence sought to be used has become so attenuated as to dissipate the taint.

"Whatever the merits of defendant's theory, the facts necessary to support its application are not present in the record, nor has the prosecution been called upon to respond. We see no reason why any such theory could not have been presented contemporaneously with the motion to suppress the other evidence, as required by *People v Childers,* 20 Mich App 639; 174 NW2d 565 (1969); *People v Matthews,* 22 Mich App 619; 178 NW2d 94 (1970). Consequently, we see no reason to delve into the intricacies of defendant's unsupported theory."

Prior to trial when defense counsel made his motion to suppress evidence allegedly seized illegally, he, at the same time, sought to suppress

evidence or testimony arising out of an improper lineup at which defendant was not represented by counsel. Although the police allowed defendant to call an attorney before they conducted the lineup, the attorney did not appear. The prosecutor, therefore, stipulated that the lineup was unconstitutional under applicable case authority and that testimony based on this illegal confrontation would not be introduced. But claiming independent recollection on the part of the two employees at the baking company, he stated his intention to bring their identification of the defendant in evidence that way. Defense counsel pursued the question no further at that time.

We are constrained to hold that the in-court identification of defendant by the witnesses had a basis independent of the defective identification procedure. The evidence indicates that the illumination in the store was good and that one of the witnesses was the length of a dollar bill away from defendant. This person looked directly into the bandit's eyes and stated at the preliminary examination that she didn't think she would ever forget his eyes. She provided a reasonably detailed description of both defendant and the vehicle used to escape from the scene. When the lineup was held about two weeks after the robbery she picked defendant from amongst the five assembled Negro males, all of whom were wearing hats. The other witness who was physically unable to attend the lineup related at the preliminary examination how she had observed the holdup man had a pointed chin and piercing eyes. She had been within three feet of defendant and was sure that he was the man. On these facts we think that the identification of defendant was independent of the original impermissible lineup identification.

Affirmed.

All concurred.