## LELAND v. OREGON.

No. 176.   Argued January 29, 1952.—Decided June 9, 1952.

*Thomas H. Ryan* argued the cause for appellant. With him on the brief was *Harold L. Davidson*.

*J. Raymond Carskadon* and *Charles Eugene Raymond* argued the cause for appellee. With them on the brief was *George Neuner*, Attorney General of Oregon.

MR. JUSTICE CLARK delivered the opinion of the Court.

Appellant was charged with murder in the first degree. He pleaded not guilty and gave notice of his intention to prove insanity. Upon trial in the Circuit Court of

Multnomah County, Oregon, he was found guilty by a jury. In accordance with the jury's decision not to recommend life imprisonment, appellant received a sentence of death. The Supreme Court of Oregon affirmed. 190 Ore. 598, 227 P. 2d 785. The case is here on appeal. 28 U. S. C. § 1257 (2).

Oregon statutes required appellant to prove his insanity beyond a reasonable doubt and made a "morbid propensity" no defense.[1] The principal questions in this appeal are raised by appellant's contentions that these statutes deprive him of his life and liberty without due process of law as guaranteed by the Fourteenth Amendment.

The facts of the crime were revealed by appellant's confessions, as corroborated by other evidence. He killed a fifteen-year-old girl by striking her over the head several times with a steel bar and stabbing her twice with a hunting knife. Upon being arrested five days later for the theft of an automobile, he asked to talk with a homicide officer, voluntarily confessed the murder, and directed the police to the scene of the crime, where he pointed out the location of the body. On the same day, he signed a full confession and, at his own request, made another in his own handwriting. After his indictment, counsel were appointed to represent him. They have done so with diligence in carrying his case through three courts.

One of the Oregon statutes in question provides:

> "When the commission of the act charged as a crime is proven, and the defense sought to be established is the insanity of the defendant, the same must be proven beyond a reasonable doubt . . . ."[2]

---

[1] Ore. Comp. Laws, 1940, §§ 26–929, 23–122.

[2] *Id.,* § 26–929.

Appellant urges that this statute in effect requires a defendant pleading insanity to establish his innocence by disproving beyond a reasonable doubt elements of the crime necessary to a verdict of guilty, and that the statute is therefore violative of that due process of law secured by the Fourteenth Amendment. To determine the merit of this challenge, the statute must be viewed in its relation to other relevant Oregon law and in its place in the trial of this case.

In conformity with the applicable state law,[3] the trial judge instructed the jury that, although appellant was charged with murder in the first degree, they might determine that he had committed a lesser crime included in that charged. They were further instructed that his plea of not guilty put in issue every material and necessary element of the lesser degrees of homicide, as well as of the offense charged in the indictment. The jury could have returned any of five verdicts:[4] (1) guilty of murder in the first degree, if they found beyond a reasonable doubt that appellant did the killing purposely and with deliberate and premeditated malice; (2) guilty of murder in the second degree, if they found beyond a reasonable doubt that appellant did the killing purposely and maliciously, but without deliberation and premeditation; (3) guilty of manslaughter, if they found beyond a reasonable doubt that appellant did the killing without malice or deliberation, but upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible; (4) not guilty, if, after a careful considera-

---

[3] *Id.*, §§ 26–947, 26–948.

[4] Six possible verdicts were listed in the instructions, guilty of murder in the first degree being divided into two verdicts: with, and without, recommendation of life imprisonment as the penalty. Since the jury in this case did not recommend that punishment, the death sentence was automatically invoked under Oregon law. *Id.*, § 23–411.

tion of all the evidence, there remained in their minds a reasonable doubt as to the existence of any of the necessary elements of each degree of homicide; and (5) not guilty by reason of insanity, if they found beyond a reasonable doubt that appellant was insane at the time of the offense charged. A finding of insanity would have freed appellant from responsibility for any of the possible offenses. The verdict which the jury determined—guilty of first degree murder—required the agreement of all twelve jurors; a verdict of not guilty by reason of insanity would have required the concurrence of only ten members of the panel.[5]

It is apparent that the jury might have found appellant to have been mentally incapable of the premeditation and deliberation required to support a first degree murder verdict or of the intent necessary to find him guilty of either first or second degree murder, and yet not have found him to have been legally insane. Although a plea of insanity was made, the prosecution was required to prove beyond a reasonable doubt every element of the crime charged, including, in the case of first degree murder, premeditation, deliberation, malice and intent.[6] The trial court repeatedly emphasized this requirement in its charge to the jury.[7] Moreover, the judge directed the jury as follows:

> "I instruct you that the evidence adduced during this trial to prove defendant's insanity shall be considered and weighed by you, with all other evidence,

---

[5] The agreement of ten jurors would also have been sufficient for a verdict of not guilty, a verdict of guilty of second degree murder, or a verdict of guilty of manslaughter. R. 333–334.

[6] Ore. Comp. Laws, 1940, §§ 23–401, 23–414, 26–933; cf. *State v. Butchek*, 121 Ore. 141, 253 P. 367, 254 P. 805 (1927).

[7] R. 321, 323, 324, 330, 331, 332.

whether or not you find defendant insane, in regard to the ability of the defendant to premeditate, form a purpose, to deliberate, act wilfully, and act maliciously; and if you find the defendant lacking in such ability, the defendant cannot have committed the crime of murder in the first degree.

"I instruct you that should you find the defendant's mental condition to be so affected or diseased to the end that the defendant could formulate no plan, design, or intent to kill in cool blood, the defendant has not committed the crime of murder in the first degree." [8]

These and other instructions, and the charge as a whole, make it clear that the burden of proof of guilt, and of all the necessary elements of guilt, was placed squarely upon the State. As the jury was told, this burden did not shift, but rested upon the State throughout the trial, just as, according to the instructions, appellant was presumed to be innocent until the jury was convinced beyond a reasonable doubt that he was guilty.[9] The jurors were to consider separately the issue of legal sanity *per se*—an issue

---

[8] R. 330. Again:

"I instruct you that to constitute murder in the first degree, it is necessary that the State prove beyond a reasonable doubt, and to your moral certainty, that the defendant's design or plan to take life was formed and matured in cool blood and not hastily upon the occasion.

"I instruct you that in determining whether or not the defendant acted purposely and with premeditated and deliberated malice, it is your duty to take into consideration defendant's mental condition and all factors relating thereto, and that even though you may not find him legally insane, if, in fact, his mentality was impaired, that evidence bears upon these factors, and it is your duty to consider this evidence along with all the other evidence in the case." R. 332.

[9] R. 321, 324.

set apart from the crime charged, to be introduced by a special plea and decided by a special verdict.[10] On this issue appellant had the burden of proof under the statute in question here.

By this statute, originally enacted in 1864,[11] Oregon adopted the prevailing doctrine of the time—that, since most men are sane, a defendant must prove his insanity to avoid responsibility for his acts. That was the rule announced in 1843 in the leading English decision in *M'Naghten's Case:*

> "[T]he jurors ought to be told in all cases that every man is to be presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and . . . to establish a defence on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing . . . ." [12]

---

[10] Ore. Comp. Laws, 1940, § 26–846 (requiring notice of purpose to show insanity as defense); *id.,* § 26–955 (providing for verdict of not guilty by reason of insanity and consequent commitment to asylum by judge). After defining legal insanity, the trial court instructed the jury:

"In this case, evidence has been introduced relating to the mental capacity and condition of the defendant . . . at the time [the girl] is alleged to have been killed, and *if* you are satisfied beyond a reasonable doubt that the defendant killed her in the manner alleged in the indictment, or within the lesser degrees included therein, *then* you are to consider the mental capacity of the defendant at the time the homicide is alleged to have been committed." R. 327 (emphasis supplied).

[11] Deady's Gen. Laws of Ore., 1845–1864, Code of Crim. Proc., § 204.

[12] 10 Cl. & Fin. 200, 210 (H. L., 1843).

This remains the English view today.[13]   In most of the nineteenth-century American cases, also, the defendant was required to "clearly" prove insanity,[14] and that was probably the rule followed in most states in 1895,[15] when *Davis* v. *United States* was decided.   In that case this Court, speaking through Mr. Justice Harlan, announced the rule for federal prosecutions to be that an accused is "entitled to an acquittal of the specific crime charged if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime."[16]   In reaching that conclusion, the Court observed:

> "The views we have expressed are supported by many adjudications that are entitled to high respect. If such were not the fact, we might have felt obliged to accept the general doctrine announced in some of the above cases; for it is desirable that there be uniformity of rule in the administration of the criminal law in governments whose constitutions equally recognize the fundamental principles that are deemed essential for the protection of life and liberty."[17]

The decision obviously establishes no constitutional doctrine, but only the rule to be followed in federal courts. As such, the rule is not in question here.

---

[13] Stephen, Digest of the Criminal Law (9th ed., Sturge, 1950), 6; cf. *Sodeman* v. *The King*, [1936] W. N. 190 (P. C.) ; see *Woolmington* v. *Director of Public Prosecutions*, [1935] A. C. 462, 475.

[14] Weihofen, Insanity as a Defense in Criminal Law (1933), 151– 155.   "Clear proof" was sometimes interpreted to mean proof beyond a reasonable doubt, *e. g.*, *State* v. *De Rancé*, 34 La. Ann. 186 (1882), and sometimes to mean proof by a preponderance of the evidence, *e. g.*, *Hurst* v. *State*, 40 Tex. Cr. R. 383, 50 S. W. 719 (1899).

[15] See Wharton, Criminal Evidence (9th ed. 1884), §§ 336–340.

[16] 160 U. S. 469, 484 (1895) ; see *Hotema* v. *United States*, 186 U. S. 413 (1902) ; *Matheson* v. *United States*, 227 U. S. 540 (1913).

[17] *Id.*, at 488.

Today, Oregon is the only state that requires the accused, on a plea of insanity, to establish that defense beyond a reasonable doubt. Some twenty states, however, place the burden on the accused to establish his insanity by a preponderance of the evidence or some similar measure of persuasion.[18] While there is an evident distinction between these two rules as to the quantum of proof required, we see no practical difference of such magnitude as to be significant in determining the constitutional question we face here. Oregon merely requires a heavier burden of proof. In each instance, in order to establish insanity as a complete defense to the charges preferred, the accused must prove that insanity. The fact that a practice is followed by a large number of states is not conclusive in a decision as to whether that practice accords with due process, but it is plainly worth considering in determining whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder* v. *Massachusetts,* 291 U. S. 97, 105 (1934).

Nor is this a case in which it is sought to enforce against the states a right which we have held to be secured to defendants in federal courts by the Bill of Rights. In *Davis* v. *United States, supra,* we adopted a rule of procedure for the federal courts which is contrary to that of

---

[18] Weihofen lists twelve states as requiring proof by a preponderance of the evidence, four as requiring proof "to the satisfaction of the jury," two which combine these formulae, one where by statute the defense must be "clearly proved to the reasonable satisfaction of the jury," one where it has been held that the jury must "believe" the defendant insane, and one where the quantum of proof has not been stated by the court of last resort, but which appears to follow the preponderance rule. Weihofen, Insanity as a Defense in Criminal Law (1933), 148–151, 172–200. Twenty-two states, including Oregon, are mentioned as holding that the accused has the burden of proving insanity, at least by a preponderance of the evidence, in 9 Wigmore, Evidence (3d ed. 1940 and Supp. 1951), § 2501.

Oregon. But "[i]ts procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar." *Snyder* v. *Massachusetts, supra,* at 105. "The judicial judgment in applying the Due Process Clause must move within the limits of accepted notions of justice and is not to be based upon the idiosyncrasies of a merely personal judgment. . . . An important safeguard against such merely individual judgment is an alert deference to the judgment of the state court under review." MR. JUSTICE FRANKFURTER, concurring in *Malinski* v. *New York,* 324 U. S. 401, 417 (1945). We are therefore reluctant to interfere with Oregon's determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice.

Nothing said in *Tot* v. *United States,* 319 U. S. 463 (1943), suggests a different conclusion. That decision struck down a specific presumption created by congressional enactment. This Court found that the fact thus required to be presumed had no rational connection with the fact which, when proven, set the presumption in operation, and that the statute resulted in a presumption of guilt based only upon proof of a fact neither criminal in itself nor an element of the crime charged. We have seen that, here, Oregon required the prosecutor to prove beyond a reasonable doubt every element of the offense charged. Only on the issue of insanity as an absolute bar to the charge was the burden placed upon appellant. In all English-speaking courts, the accused is obliged to introduce proof if he would overcome the presumption of sanity.[19]

---

[19] Weihofen, Insanity as a Defense in Criminal Law (1933), 161; 9 Wigmore, Evidence (3d ed. 1940), § 2501.

It is contended that the instructions may have confused the jury as to the distinction between the State's burden of proving premeditation and the other elements of the charge and appellant's burden of proving insanity. We think the charge to the jury was as clear as instructions to juries ordinarily are or reasonably can be, and, with respect to the State's burden of proof upon all the elements of the crime, the charge was particularly emphatic. Juries have for centuries made the basic decisions between guilt and innocence and between criminal responsibility and legal insanity upon the basis of the facts, as revealed by all the evidence, and the law, as explained by instructions detailing the legal distinctions, the placement and weight of the burden of proof, the effect of presumptions, the meaning of intent, etc. We think that to condemn the operation of this system here would be to condemn the system generally. We are not prepared to do so.

Much we have said applies also to appellant's contention that due process is violated by the Oregon statute providing that a "morbid propensity to commit prohibited acts, existing in the mind of a person, who is not shown to have been incapable of knowing the wrongfulness of such acts, forms no defense to a prosecution therefor." [20] That statute amounts to no more than a legislative adoption of the "right and wrong" test of legal insanity in preference to the "irresistible impulse" test.[21] Knowledge of right and wrong is the exclusive test of criminal responsibility in a majority of American jurisdictions.[22] The science of psychiatry has made tremendous strides

---

[20] Ore. Comp. Laws, 1940, § 23–122.

[21] *State* v. *Garver,* 190 Ore. 291, 225 P. 2d 771 (1950); *State* v. *Wallace,* 170 Ore. 60, 131 P. 2d 222 (1942); *State* v. *Hassing,* 60 Ore. 81, 118 P. 195 (1911).

[22] Weihofen, Insanity as a Defense in Criminal Law (1933), 15, 64–68, 109–147.

since that test was laid down in *M'Naghten's Case*,[23] but the progress of science has not reached a point where its learning would compel us to require the states to eliminate the right and wrong test from their criminal law.[24] Moreover, choice of a test of legal sanity involves not only scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility.[25] This whole problem has evoked wide disagreement among those who have studied it. In these circumstances it is clear that adoption of the irresistible impulse test is not "implicit in the concept of ordered liberty." [26]

Appellant also contends that the trial court's refusal to require the district attorney to make one of appellant's confessions available to his counsel before trial was contrary to due process. We think there is no substance in this argument. This conclusion is buttressed by the absence of any assignment of error on this ground in appellant's motion for a new trial. Compare *Avery* v. *Alabama*, 308 U. S. 444, 452 (1940). While it may be the better practice for the prosecution thus to exhibit a confession, failure to do so in this case in no way denied appellant a fair trial. The record shows that the confession was produced in court five days before appellant rested his case. There was ample time both for counsel and expert witnesses to study the confession. In addition the trial judge offered further time for that purpose but it

---

[23] 10 Cl. & Fin. 200 (H. L., 1843).

[24] Compare *Fisher* v. *United States*, 328 U. S. 463, 475–476 (1946).

[25] See *Holloway* v. *United States*, 80 U. S. App. D. C. 3, 148 F. 2d 665 (1945); Glueck, Mental Disorder and the Criminal Law (1925); Hall, Mental Disease and Criminal Responsibility, 45 Col. L. Rev. 677 (1945); Keedy, Insanity and Criminal Responsibility, 30 Harv. L. Rev. 535, 724 (1917).

[26] *Palko* v. *Connecticut*, 302 U. S. 319, 325 (1937).

was refused. There is no indication in the record that appellant was prejudiced by the inability of his counsel to acquire earlier access to the confession.

*Affirmed.*

MR. JUSTICE FRANKFURTER, joined by MR. JUSTICE BLACK, dissenting.

However much conditions may have improved since 1905, when William H. (later Mr. Chief Justice) Taft expressed his disturbing conviction "that the administration of the criminal law in all the states in the Union (there may be one or two exceptions) is a disgrace to our civilization" (Taft, The Administration of Criminal Law, 15 Yale L. J. 1, 11), no informed person can be other than unhappy about the serious defects of present-day American criminal justice. It is not unthinkable that failure to bring the guilty to book for a heinous crime which deeply stirs popular sentiment may lead the legislature of a State, in one of those emotional storms which on occasion sweep over our people, to enact that thereafter an indictment for murder, following attempted rape, should be presumptive proof of guilt and cast upon the defendant the burden of proving beyond a reasonable doubt that he did not do the killing. Can there be any doubt that such a statute would go beyond the freedom of the States, under the Due Process Clause of the Fourteenth Amendment, to fashion their own penal codes and their own procedures for enforcing them? Why is that so? Because from the time that the law which we have inherited has emerged from dark and barbaric times, the conception of justice which has dominated our criminal law has refused to put an accused at the hazard of punishment if he fails to remove every reasonable doubt of his innocence in the minds of jurors. It is the duty of the Government to establish his guilt beyond a rea-

sonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of "due process." Accordingly there can be no doubt, I repeat, that a State cannot cast upon an accused the duty of establishing beyond a reasonable doubt that his was not the act which caused the death of another.

But a muscular contraction resulting in a homicide does not constitute murder. Even though a person be the immediate occasion of another's death, he is not a deodand to be forfeited like a thing in the medieval law. Behind a muscular contraction resulting in another's death there must be culpability to turn homicide into murder.

The tests by which such culpability may be determined are varying and conflicting. One does not have to echo the scepticism uttered by Brian, C. J., in the fifteenth century, that "the devil himself knoweth not the mind of men" to appreciate how vast a darkness still envelopes man's understanding of man's mind. Sanity and insanity are concepts of incertitude. They are given varying and conflicting content at the same time and from time to time by specialists in the field. Naturally there has always been conflict between the psychological views absorbed by law and the contradictory views of students of mental health at a particular time. At this stage of scientific knowledge it would be indefensible to impose upon the States, through the due process of law which they must accord before depriving a person of life or liberty, one test rather than another for determining criminal culpability, and thereby to displace a State's own choice of such a test, no matter how backward it may be in the light of the best scientific canons. Inevitably, the legal tests for determining the mental state on which criminal culpability is to be based are in strong conflict in our forty-

eight States. But when a State has chosen its theory for testing culpability, it is a deprivation of life without due process to send a man to his doom if he cannot prove beyond a reasonable doubt that the physical events of homicide did not constitute murder because under the State's theory he was incapable of acting culpably.

This does not preclude States from utilizing common sense regarding mental irresponsibility for acts resulting in homicide—from taking for granted that most men are sane and responsible for their acts. That a man's act is not his, because he is devoid of that mental state which begets culpability, is so exceptional a situation that the law has a right to devise an exceptional procedure regarding it. Accordingly, States may provide various ways for dealing with this exceptional situation by requiring, for instance, that the defense of "insanity" be specially pleaded, or that he on whose behalf the claim of insanity is made should have the burden of showing enough to overcome the assumption and presumption that normally a man knows what he is about and is therefore responsible for what he does, or that the issue be separately tried, or that a standing disinterested expert agency advise court and jury, or that these and other devices be used in combination. The laws of the forty-eight States present the greatest diversity in relieving the prosecution from proving affirmatively that a man is sane in the way it must prove affirmatively that the defendant is the man who pulled the trigger or struck the blow. Such legislation makes no inroad upon the basic principle that the State must prove guilt, not the defendant innocence, and prove it to the satisfaction of a jury beyond a reasonable doubt.

For some unrecorded reason, Oregon is the only one of the forty-eight States that has made inroads upon that principle by requiring the accused to prove beyond a reasonable doubt the absence of one of the essential elements for the commission of murder, namely, culpability

for his muscular contraction. Like every other State, Oregon presupposes that an insane person cannot be made to pay with his life for a homicide, though for the public good he may of course be put beyond doing further harm. Unlike every other State, however, Oregon says that the accused person must satisfy a jury beyond a reasonable doubt that, being incapable of committing murder, he has not committed murder.

Such has been the law of Oregon since 1864. That year the Code of Criminal Procedure defined murder in the conventional way, but it also provided: "When the commission of the act charged as a crime is proven, and the defence sought to be established is the insanity of the defendant, the same must be proven beyond a reasonable doubt . . . ." General Laws of Oregon, 1845–1864, p. 441 *et seq.*, §§ 502, 204. The latter section, through various revisions, is the law of Oregon today and was applied in the conviction under review.

Whatever tentative and intermediate steps experience makes permissible for aiding the State in establishing the ultimate issues in a prosecution for crime, the State cannot be relieved, on a final show-down, from proving its accusation. To prove the accusation it must prove each of the items which in combination constitute the offense. And it must make such proof beyond a reasonable doubt. This duty of the State of establishing every fact of the equation which adds up to a crime, and of establishing it to the satisfaction of a jury beyond a reasonable doubt is the decisive difference between criminal culpability and civil liability. The only exception is that very limited class of cases variously characterized as *mala prohibita* or public torts or enforcement of regulatory measures. See *United States* v. *Dotterweich,* 320 U. S. 277; *Morissette* v. *United States,* 342 U. S. 246. Murder is not a *malum prohibitum* or a public tort or the object of regulatory legislation. To suggest that the legal oddity by

which Oregon imposes upon the accused the burden of proving beyond reasonable doubt that he had not the mind capable of committing murder is a mere difference in the measure of proof, is to obliterate the distinction between civil and criminal law.

It is suggested that the jury were charged not merely in conformity with this requirement of Oregon law but also in various general terms, as to the duty of the State to prove every element of the crime charged beyond a reasonable doubt, including in the case of first degree murder, "premeditation, deliberation, malice and intent." Be it so. The short of the matter is that the Oregon Supreme Court sustained the conviction on the ground that the Oregon statute "casts upon the defendant the burden of proving the defense of insanity beyond a reasonable doubt." *State* v. *Leland,* 190 Ore. 598, 638, 227 P. 2d 785, 802. To suggest, as is suggested by this Court but not by the State court, that, although the jury was compelled to act upon this requirement, the statute does not offend the Due Process Clause because the trial judge also indulged in a farrago of generalities to the jury about "premeditation, deliberation, malice and intent," is to exact gifts of subtlety that not even judges, let alone juries, possess. See *International Harvester Co.* v. *Kentucky,* 234 U. S. 216, 223–224. If the Due Process Clause has any meaning at all, it does not permit life to be put to such hazards.

To deny this mode of dealing with the abuses of insanity pleas and with unedifying spectacles of expert testimony, is not to deprive Oregon of the widest possible choice of remedies for circumventing such abuses. The multiform legislation prevailing in the different States evinces the great variety of the experimental methods open to them for dealing with the problems raised by insanity defenses in prosecutions for murder.

To repeat the extreme reluctance with which I find a constitutional barrier to any legislation is not to mouth a threadbare phrase. Especially is deference due to the policy of a State when it deals with local crime, its repression and punishment. There is a gulf, however narrow, between deference to local legislation and complete disregard of the duty of judicial review which has fallen to this Court by virtue of the limits placed by the Fourteenth Amendment upon State action. This duty is not to be escaped, whatever I may think of investing judges with the power which the enforcement of that Amendment involves.