**Neil PHILLIPS, Petitioner-Appellant,**

v.

**Carl G. HOCKER, Warden,**
**Respondent-Appellee.**

**No. 72–1715.**

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1973.

Certiorari Denied April 16, 1973.
See 93 S.Ct. 1916.

Paul A. Bible (argued), of McDonald, Carano, Wilson & Bergin, Reno, Nev., for petitioner-appellant.

Robert A. Groves, Deputy Atty. Gen. (argued), Herbert F. Ashwede, Chief Deputy Atty. Gen., Robert List, Atty. Gen., for respondent-appellee.

Before JERTBERG, DUNIWAY and TRASK, Circuit Judges.

JERTBERG, Circuit Judge:

Appellant, Neil Phillips, a prisoner of the State of Nevada, appeals from an order of the United States District Court for the State of Nevada denying his petition for a writ of habeas corpus. Following trial to a jury, appellant was con-

victed of first degree murder and sentenced to life imprisonment without possibility of parole.

On direct appeal to the Supreme Court of the State of Nevada, his conviction was affirmed. Phillips v. State of Nevada, 86 Nev. 720, 475 P.2d 671 (1970); Rehrg. Denied Nov. 30, 1970. His petition for a writ of certiorari to the United States Supreme Court was denied on June 21, 1971. Phillips v. Nevada, 403 U.S. 940, 91 S.Ct. 2260, 29 L.Ed.2d 719.

The undisputed facts, taken from appellant's brief, are as follows:

On December 26, 1965, the emasculated body of John Russell Blair was discovered on the mountainside of Doby Summit, Elko County, Nevada, with three bullet wounds in the head. Almost two years later, on December 16, 1967, the appellant was arrested and charged with the murder of Blair.

The evidence at the trial established that on the day the decedent's body was discovered, the appellant had appeared at the home of his brother, Chester Phillips, in an obviously troubled condition, and requested that his brother accompany him to Carlin, Nevada. His brother complied, and during the trip appellant told his brother that he had shot a man earlier that morning when the man appeared to be reaching for a knife to attack him, and had left the body on Doby Summit. Appellant's brother advised appellant to surrender to the authorities, but appellant did not do so. At the same time, Chester observed appellant remove a .22 caliber pistol from the truck, which he recognized as a pistol which had been given to appellant by their father, and also observed blood stains in the truck and on the back of appellant's shirt.

Two years later, on December 12, 1967, appellant told his wife, Lillie, and his sister-in-law, Rosemary Dimitroff, that he "killed that guy" on Doby Summit because the decedent was going for a knife. There were two subsequent conversations with regard to the decedent's death between the appellant and his sister-in-law. Approximately two months after he was taken into custody, the appellant escaped from the Elko County Jail, and was recaptured.

Appellant did not testify in his own behalf. His only witness was Robert Gutsell, a psychiatrist, who expressed the opinion that the appellant was sane at the time of the psychiatric examination, then knew the nature of the charge against him, and was competent to assist in his own defense.

On direct examination he expressed the opinion that, at the time of the homicide, appellant was under the unfounded belief that he was in danger of being attacked by the decedent, and expressed the bare opinion that appellant was insane at the time of the homicide.

On cross-examination he stated that:

He "did not believe that appellant was insane in the ordinary sense before this drinking bout took place, or when not drinking we will say, and that he was not insane after he sobered up."

And that:

"[H]e [defendant] was mentally deranged at the time because of 48 hours or thereabouts, more or less, of imbibing alcoholic drinks, with the added, perhaps, factor of fatigue, which might enter into it. Loss of sleep."

He was unable to state whether appellant's state of mind at the time of the homicide was an actual state of mind or intoxication. He was unable to state whether appellant knew the difference between right and wrong at the time of the homicide. He further stated if appellant had not been drinking he would have concluded that appellant was sane at the time of the homicide.

█ Only two issues are presented for review on this appeal. First, appellant contends that the District Court erred in ruling that the law of the State of Nevada, which imposes upon a defendant in a prosecution for murder, the burden of proving insanity by a preponderance of the evidence does not violate

the Due Process Clause of the Constitution of the United States and thereby deprive him of a fair trial.

The law is well-settled in the State of Nevada. As stated by the Supreme Court of Nevada in *Phillips, supra,* 475 P.2d at page 672:

"Whether sanity is an element of the crime of murder which must be proven by the state is a question that has been well-settled. Insanity is an affirmative proposition which the defendant must establish by a preponderance of proof. Gallegos v. State, 84 Nev. 608, 446 P.2d 656 (1968)."

In *Gallegos, supra,* 446 P.2d at page 657, it is stated:

"Insanity is in the nature of an affirmative defense. Sanity is presumed and in order to overcome this presumption the defendant must establish his insanity by a preponderance of evidence. State v. Bourdlais, 70 Nev. 233, 265 P.2d 761 (1954); State v. Lewis, 20 Nev. 333, 22 P. 241 (1889). The jury was not only properly instructed, but its verdict is supported by substantial evidence on this issue. Elias v. State, 73 Nev. 108, 310 P.2d 621 (1957)."

In support of his contention the appellant relies primarily on Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L. Ed. 499 (1895), which held, in effect, that the prosecution must prove every element of the crime of murder, including mental capacity, beyond a reasonable doubt. The prosecution of *Davis* was for a federal crime, and he was convicted in a federal court. The rule in *Davis* was limited by Leland v. Oregon, 343 U. S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1951).

In *Leland,* appellant was charged with murder in the first degree. He pleaded not guilty and gave notice of his intention to prove insanity. Oregon statutes required appellant to prove his insanity beyond a reasonable doubt, and the jury was so instructed. He was found guilty and sentenced to death. His conviction was affirmed by the Supreme Court of Oregon. On appeal to the Supreme Court of the United States his conviction was affirmed, the Court holding that the requirement that the appellant prove his insanity beyond a reasonable doubt did not deprive him of life and liberty without due process of law, in violation of the Fourteenth Amendment. In the course of its opinion, the Supreme Court stated at page 797, 72 S.Ct. at page 1007:

"The decision [*Davis, supra*] obviously establishes no constitutional doctrine, but only the rule to be followed in federal courts. As such, the rule is not in question here."

And further, commencing at page 798, 72 S.Ct. at 1007:

"Nor is this a case in which it is sought to enforce against the states a right which we have held to be secured to defendants in federal courts by the Bill of Rights. In Davis v. United States, *supra,* we adopted a rule of procedure for the federal courts which is contrary to that of Oregon. But '[i]ts procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.' Snyder v. Massachusetts, [291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)], *supra,* at 105. * * *. We are therefore reluctant to interfere with Oregon's determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice."

Appellant contends that the impact of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) has seriously undermined the holding in *Leland. Winship* was a juvenile case prosecuted under a New York statute which required that the elements which would otherwise constitute a crime if an adult was accused need only be proved by a preponderance of the evidence where a

juvenile is accused. The Supreme Court reversed, holding that proof beyond a reasonable doubt, which is required by the Due Process Clause in criminal trials is among the essentials of due process and fair treatment required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult.

It is to be noted that the issue of insanity was not involved in In Re Winship, and that case in no way related to the right of a state to formulate its own rule on the burden of proof of insanity in criminal cases.

We also note that *Leland* was specifically mentioned in *Re Winship,* and we find no intimation in *Re Winship* that *Leland* should be questioned as to its holding on the nonconstitutional aspect of the insanity defense.

We believe that *Leland* remains viable and conclude that the first issue urged by appellant presents no constitutional question reviewable in these proceedings. See Earp v. Cupp, 453 F.2d 378 (9th Cir. 1972).

■ The state trial judge instructed the jury: [Instruction No. 22]

"The killing of the deceased named in the indictment or information by the Defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified, or excused in committing the homicide."

Appellant's remaining and second contention is that the District Judge erred in holding that the instruction was harmless error and did not deprive the appellant of due process.

On direct appeal, the Supreme Court of Nevada held that the giving of such instruction was error under state law, but within the circumstances of the case the error was harmless.

The District Judge, after reviewing the record and instructions as a whole, reached the same conclusion, and concluded that the giving of such instruction did not mislead the jury or jeopardize or prejudice the appellant. He stated that the issue was purely one of harmless error under established principles of appellate review, and not of constitutional error involving Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Appellant contends that the instruction misled and confused the jury into believing that the burden of proof rested upon him to establish his innocence, and not upon the prosecution to establish his guilt beyond a reasonable doubt, and also deprived him of the presumption of innocence.

We disagree. We have reviewed the thirty-seven instructions given to the jury by the state trial judge, and find that the jury was instructed that:

The plea of not guilty entered by the appellant is in law a denial of every material allegation of the Information and as to each material allegation of the Information an issue is raised by his plea of not guilty;

It is not proper for the jury to single out any one of the instructions as the law, but they must all be considered together and construed as a whole;

The defendant in this case is presumed to be innocent and this is a presumption of law with which the defendant is clothed and it abides with him throughout the entire trial of the case until it is overcome by competent evidence sufficient in your minds to establish the guilt of the offense charged, *beyond a reasonable doubt.* In determining the guilt or innocence of the defendant, it is not necessary that he establish his innocence, but it is sufficient in order to warrant him an acquittal if a reasonable doubt exists in your minds as to

his guilt, and it makes no difference whether the reasonable doubt thus created is established from the evidence produced on the part of the State or that produced by the defendant, or from the lack of evidence, or its unreliability or weight; [Emphasis added]

There are two classes of evidence recognized and admitted in Courts of Justice, upon either of which Juries may lawfully find an accused guilty of crime. One is direct or positive testimony of an eye witness to the commission of the crime, and the other is proof by testimony of circumstances pointing sufficiently strong to the commission or lack of commission of the crime and which is known as circumstantial evidence; that the State and the Defendant are not required to prove all or any part of the facts by direct and positive evidence. Circumstantial evidence is legal and competent evidence in criminal cases, and, where *beyond a reasonable doubt*, the evidence is all consistent with that of guilt *beyond a reasonable doubt* and inconsistent with every other hypothesis, including the hypothesis of Defendant's innocence or including the possibility of the commission of the crime by another, then it is the duty of the Jury, under the law to render a verdict finding him guilty.

But if, on the other hand, any evidence in the case is consistent with the hypothesis of Defendant's innocence, or if you do not feel an abiding conviction of the truth of the charge, or if you entertain a *reasonable doubt*, resting upon the unsatisfactory character of the evidence, or for any other reason growing out of the evidence in the case to establish Defendant's guilt, your duty is just as imperative to acquit him; [Emphasis added]

In all cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged; provided, however, that the guilt of the commission of such offense is established *beyond a reasonable doubt*; [Emphasis added]

The defendant has placed in issue his sanity at the time of the commission of the offense. The law does not hold a person criminally accountable for his conduct if, at the time thereof, he was insane. Insanity, as the word is used in these instructions, means such a diseased and deranged condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of his act and of distinguishing between right and wrong in relation to the act with which he is charged.

The test of accountability is this: Did the party have sufficient mental capacity to appreciate the character and quality of the act? Did he know and understand that it was a violation of the rights of another, and in itself wrong? If he had the capacity thus to appreciate the character and to comprehend the probable or possible consequences of his act, he was sane under the law and is responsible to the law for the act thus committed. On the contrary, if you find that he was not, at that time, able to distinguish right from wrong, or was incapable of knowing the nature and quality of the act, then he was not legally responsible for any acts committed by him and you should find him not guilty by reason of insanity;

The burden of proving the crime never shifts in a criminal action and *all reasonable doubts* must be resolved in favor of the defendant, whether these doubts be raised by the evidence of the State or the Defendant, and it is the duty of the State to establish the guilt of the defendant *beyond a reasonable doubt*; [Emphasis added]

When upon the trial of a charge of murder, the Jury is convinced *beyond a reasonable doubt* that the crime of murder has been committed by a Defendant, but has a reasonable doubt whether such

murder was of the first or of the second degree, the Jury must give to such Defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree. [Emphasis added]

By other instructions the jury was correctly instructed as to the elements of the crime charged (including lesser offenses), and to the fact that the burden of proof required the prosecution to establish each element of such offense *beyond a reasonable doubt.* Other instructions were given as to the effect of drunkenness of the defendant, and circumstances justifying homicide in self defense.

Seven forms of verdicts were submitted to the jury. They were:

Guilty of murder in the first degree with the imposition of the death penalty;

Guilty of murder in the first degree with imprisonment for life without possibility of parole;

Guilty of murder in the first degree with imprisonment for life;

Guilty of murder in the second degree;

Guilty of the crime of voluntary manslaughter;

Verdict of not guilty; and

Verdict of not guilty by reason of insanity.

Although a plea of insanity was made, the State was required to prove *beyond a reasonable doubt* every element of the crime charged, including premeditation, deliberation, malice and intent.

We are satisfied that the instructions as a whole properly placed the burden of proof on the prosecution to establish appellant's guilt *beyond a reasonable doubt,* and that the giving of the questioned instruction was harmless error beyond a reasonable doubt and in no way denied due process.

The order appealed from is affirmed.