**STATE of Maine**

v.

**Peter John BUZYNSKI.**

Supreme Judicial Court of Maine.

Dec. 27, 1974.

Henry N. Berry, III, County Atty., David P. Cluchey, Asst. County Atty., Portland, for plaintiff.

David C. Pomeroy, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

Peter John Buzynski was indicted for Robbery (17 M.R.S.A. § 3401) and first degree arson (17 M.R.S.A. § 161), and entered pleas of "Not Guilty" and "Not Guilty by Reason of Mental Disease" to both charges. Pursuant to Rule 13, M.R. Crim.P., the two indictments were ordered tried together, a procedure to which Mr. Buzynski agreed. Unlike past practice, the Justice presiding granted the defendant's motion to "bifurcate" the trial, the purpose being, as stated by defense counsel, "so there will be two issues of fact, the question of factual guilt and mental capacity be separated from the jury and given to them [sic] on different occasions."[1] At the conclusion of the initial segment of the trial · dealing only with "factual guilt," the jury was instructed on the elements of both robbery and arson, including the requisite criminal intent. The jury then answered affirmatively two questions phrased as follows: "Does the jury find that the defendant . . . did commit the crime of Robbery [arson] as alleged in the indictment?" The same jury, not having been previously informed of the plea of not guilty by reason of mental disease, was then presented conflicting evidence bearing on the defendant's mental capacity, but ·found him mentally competent. The defendant has appealed from the ultimate judgments of guilt, appeals which we must deny.

Appellant bases his appeal on the following points:

"1. The Presiding Justice erred in granting the State's Motion to send the Defendant to the Augusta State Hospital for observation, pursuant to Title 15 M.R.S.A. § 101, for to do so violated the Defendant's right against self-incrimination guaranteed by the Fifth and Fourteenth Amendments of the U. S. Constitution.

2. The Presiding Justice erred in allowing the in-court identification of the Defendant by the witness, Erwin John Richardson, because the

---

1. This procedure is not now being retrospectively questioned. We comment on it only to recognize the departure from past custom under which the jury determined in one report whether a defendant was "guilty," "not guilty" or "not guilty by reason of mental disease." *See* United States v. Greene, 160 U.S. App.D.C. 21, 489 F.2d 1145, 1156 (1973).

testimony showed, as a matter of law, that the in-court identification was tainted and prejudiced [by] the out-of-court procedures employed by the Portland Police Department.

3. The Presiding Justice erred in denying Defendant's Motion for a directed verdict of acquittal at the conclusion of the State's case in Docket # 73–82 (Arson-First Degree) because the evidence, as a matter of law, was insufficient to show a burning of the real property in question.

4. The Presiding Justice erred in refusing to allow the jury to hear the testimony of Defendant's witness, Gloria Wood.

5. The Presiding Justice erred in denying Defendant's Motion to strike the testimony of Dr. Walter Rohm, concerning the MMPI Test (Minnesota Multiphasic Personality Inventory Test) because of the gross governmental unfairness on the part of the state.

6. The Presiding Justice erred in refusing to grant Defendant's requested instructions to the jury listed as Nos. 4 and 5 in his requested instructions. The charge to the jury, of the Presiding Justice, was clearly erroneous as it related to the presumption of sanity and the burden of proof of the element of sanity."[2]

### Point I

Was it error for the Justice below, pursuant to 15 M.R.S.A. § 101,[3] to order a mental examination of the appellant at the Augusta State Hospital?

■ Appellant argues that such an examination violates his right against self-incrimination guaranteed under the Fifth Amendment of the Constitution of the United States. Since the results thus obtained may be used to rebut the special defense generated by his plea of "not guilty by reason of mental disease," he contends he is being compelled to furnish evidence against himself.[4]

■ Appellant misconceives his position. The Fifth Amendment is designed to protect "an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Schmerber v. State of California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908, 914 (1966).

■ It is clear beyond debate that an order requiring a criminal defendant to

---

2. "4. Mens Rea or criminal intent is an essential element of the crimes for which the defendant has been accused. The fact that the defendant possessed the mental capacity to have formed the necessary intent is an element of the offense which the prosecution must prove beyond a reasonable doubt.

. . . . .

"5. Alternative request for instruction if the above instructions are denied.
In Maine there is a presumption of sanity; but when there has been evidence introduced which rebuts this presumption, it then becomes the burden of the prosecution to prove the defendant's sanity beyond a reasonable doubt, Bradford v. State, [234 Md. 505] 200 A.2d 150 (1964) Md."

3. "When a finding of probable cause has been made, or an indictment has been returned against a person, or a person has taken an appeal to the Superior Court, a Justice of the Superior Court, if requested by the attorney for the respondent, or if requested by the prosecuting attorney where a respondent raises the issue of criminal reponsibility or indicates to the Court he is going to raise the issue of criminal responsibility, or by the court on its own motion for cause shown or providing that the respondent consents, may order the respondent examined to determine his mental condition with reference to the issues of criminal responsibility and competence to stand trial. . . ." 15 M.R.S.A. § 101.

4. Appellant does not, nor could he, object to this procedure on the grounds that inculpatory statements made in the process of psychiatric evaluation might be used at his trial because such evidence is not admissible. State v. Hathaway, 161 Me. 255, 211 A.2d 558.

submit to a psychiatric examination in no way compels the production of testimonial evidence. The purpose is not to extract incriminating statements but, rather, to determine the presence, or absence, of mental disease or mental defect. The results of such an examination relate only to criminal responsibility. Such being the case, no Fifth Amendment problems are involved. *See* People v. Martin, 26 Mich.App. 467, 182 N.W.2d 741 (1971); Parkin v. State, 238 So.2d 817 (Fla.1970). As was succinctly put by the Ninth Circuit Court of Appeals, an order of this nature does

"not compel 'communication' or 'testimony' on the issue of guilt of the defendant. It may be likened to compelling blood tests, handwriting exemplars, 'fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.'"

United States v. Handy, 454 F.2d 885, 889 (9th Cir. 1971); *see also* State v. Inman, 301 A.2d 348 (Me.1973).

This point is without merit.

### Point II

Was the in-court identification of the appellant so tainted by out-of-court procedures as to become inadmissible?

■ A brief factual summary will bring this argument into focus. Erwin Richardson testified that he had lost $10.00 to the appellant in a pin-ball game and, in so doing, had spent considerable time with him. Appellant had accompanied Richardson to his apartment so that the money could be obtained from Anna Lamoin, Richardson's aunt, to pay the gambling debt. Some hours later, Richardson testified, appellant returned to the apartment and was observed again while doing the acts necessary to commit arson and robbery. Subsequently, Richardson, with Mrs. Lamoin, was taken to police headquarters where he was shown six photographs out of which he selected one as being a photograph of the appellant.

Acting pursuant to our admonition to presiding justices in State v. Boyd, 294 A.2d 459 (Me.1972), the Justice below conducted an extensive examination of Richardson in the absence of the jury and stated:

"Recognizing the limitations of this witness, I am satisfied that there was an independent opportunity and observation made by this witness of a sufficient foundation upon which to base the in-Court identification that he has made.

And, I'm further satisfied that there was nothing as pertaining to the police photo mug shot identification that was in any way unfair or prejudicial to the extent that the in-Court identification by this witness is [affected] or tainted by the police photo examination and mug shot identification.

On that basis the Court will permit this witness to make the in-Court identification in the presence of the jury."

Reading the record in its entirety discloses no error. The evidence of the in-court identification was properly admitted. State v. Levesque, 281 A.2d 570 (Me.1971).

### Point III

Should the Justice below have granted appellant's motion for judgment of acquittal on the arson indictment because there was no admissible evidence of a sufficient burning of the structure to constitute arson?

Erwin Richardson testified the "[f]loor had been burnt, you know, charred." Mrs. Lamoin also described the results of the fire in this language: "The wall was black, was like burning. . . . There was a burn stain on the floor. . . . Walls got burned, you know." A Portland fireman described the condition of the wall and floor as "scorched" and "smoldering."

Appellant argues that this testimony is inadmissible because it is opinion evidence which only an expert witness can give. We disagree.

■ Acknowledging the general rule that a non-expert cannot give opinion evidence on many technical topics, we do not feel that the testimony objected to falls within that rule.

■ We have allowed a non-expert witness to testify to an existing condition which is within the common knowledge of people in general by using adjectives, or descriptive adverbs, viewing such evidence not as *opinion* evidence, but as a conclusion of fact. *See* State of Maine v. Hamilton, 149 Me. 218, 100 A.2d 234 (1953). Such evidence is properly admitted

> "where it is difficult or impossible for [a lay witness] to reproduce for the jury the totality of the conditions perceived and where the opinion given is one that men in general are accustomed and capable of making, comprehending, and understanding."

People v. Burton, 6 Ill.App.3d 879, 286 N. E.2d 792, 797 (1972). *See also* Cherry v. State, 518 P.2d 324 (Okl.Cr.1974); United States v. Milne, 487 F.2d 1232 (5th Cir. 1973); State v. Johnson, 5 Wash.App. 546, 488 P.2d 769 (1971).

■ We view the questioned testimony in this context. The jury was instructed that the crime of arson would not have been committed unless the fire "burns some material that is a part of the real estate" as opposed to "mere blackening of the walls by smoke or heat." Based on the testimony of these witnesses the jury could conclude that these legal criteria had been met. Therefore, there was no error in denying the motion for judgment of acquittal.

*Point IV*

Was the testimony of Gloria Wood admissible?

Appellant made an abortive effort to establish an alibi, although he did not testify himself. Initially, he called his sister-in-law, Diane Dionne, as a witness hoping she would testify that he had spent the entire night of the alleged crime in her company. When she limited the time spent with appellant to "about 10 or 15 minutes" between 9:00 and 9:30 p. m. on the critical evening, he then called his estranged wife, Sharon Buzynski, hoping she would refute this testimony by repeating a conversation in which Diane Dionne had admitted to her that she had in fact spent the critical night with the appellant.[5] This effort backfired when Sharon Buzynski quoted Diane Dionne as saying to her: "No, I wasn't; I seen him at a bar earlier, and I left before he did." Nothing daunted, the appellant then presented Irma Shannon, Diane Dionne's grandmother, who, *in the absence of the jury,* said she had overheard a telephone conversation between Diane Dionne and a lawyer but denied telling appellant's mother, Gloria Wood, that "Diane admitted being with Peter." Gloria Wood then testified (still in the absence of the jury) that Mrs. Shannon repeated to her a conversation she had overheard between Diane Dionne and Sharon Buzynski in which Diane is quoted as saying "he was with me all night." The Justice below ruled that Mrs. Wood's proferred testimony was inadmissible, and we agree.

The *fact* sought to be established was that appellant had been with Diane Dionne at the time the alleged crimes were committed. The testimony of Mrs. Wood related not to this fact but only to the *credibility of Irma Shannon,* i. e., to test her truthfulness when she denied having heard Diane Dionne admit being with the appellant dur-

---

5. The Justice below, on objection by the state, allowed the question, stating, "I don't think there is any real basis whereby I should permit you to impeach your own witness, but I'm going to let you ask it."

ing the critical night. Whether the jury believed, or did not believe, Mrs. Shannon had no bearing on whether Diane Dionne had, in fact, been with the appellant during the evening the crimes were consummated.

We proceed on the *assumption* that it was a proper exercise of judicial discretion to allow the appellant to attempt to impeach the credibility of his own witness, Diane Dionne,[6] and to introduce hearsay testimony of her inconsistent declarations for that purpose. State v. Warner, 237 A. 2d 150 (Me.1967). We know of no rule which extends this doctrine further. In any event, appellant fails to demonstrate any prejudice, as is his burden, since the excluded evidence was not relevant proof of any fact which would prove the suggested alibi. State v. Rist, 130 Me. 163, 154 A. 178 (1931).

### Point V

Appellant claims "governmental foul play" in the state's failure to turn over certain psychological testing data gathered by the state in its evaluation of the defendant at the Augusta State Hospital.[7]

Dr. Bernard MacKinnon, a qualified psychiatrist, testified for the appellant that it was his opinion that the alleged criminal conduct of the defendant would not have occurred "were it not for the abnormal condition of his mind." More specifically, Dr. MacKinnon diagnosed the appellant's condition as "hysterical neurosis, dissociative of type."

Dr. MacKinnon based his diagnosis in part on a psychological report prepared by a psychologist at the Augusta State Hospital.

Dr. MacKinnon was given this report along with other material pursuant to the court order. The psychologist's report was in turn based, in part, on the Minnesota Multiphases Personality Test (MMPI), a standard psychological test. It was Dr. MacKinnon's contention that the report supported his diagnosis.

On cross-examination the state established that by comparing various sections of the MMPI test results (the "L.and F Scales"), it could be determined if the individual taking the test was attempting to give answers intended to influence the test results. When asked by the state if he had compared the "L and F scales" in the MMPI test given the appellant, Dr. Mac-Kinnon responded:

"A. I have no knowledge of the L or F Scales because they are not included in the report. . . .

Q. So, you made your evaluation without knowledge as to these two scales?

A. Yes, the psychologist's job is to consider these things."

Subsequently, Dr. Walter Rohm, a psychiatrist, testified in rebuttal for the state that he had seen the MMPI test results and evaluated the "L and F Scales," which indicated to him "an effort on the part of the client to slant the profile, resulting in the test results not truly reflective of the basic underlying personality picture."

Defense counsel objected to both the cross-examination of Dr. MacKinnon and direct examination of Dr. Rohm with reference to the "L and F Scales" of the MMPI test. Defendant argues that the

---

6. The Justice below stated: "And, as I indicated earlier . . . there was nothing presented to the Court upon which I could rule that Diane Dionne was a hostile witness, nor am I able to, at this point, state that Sharon Buzynski was, in fact, a hostile witness."

7. "It is hereby ORDERED that the Maine Department of Mental Health and Correc-

tions provide copies of reports classified as 'sources of information' pertaining to Peter John Buzynski, Court Observation Case No. 41738, to . . . attorney for said defendant, as the court has authorized a private psychiatrist to examine Mr. Buzynski. These reports are necessary for the defense to prepare its case adequately."

state is guilty of governmental "foul play" in not fully complying with the court's order in failing to turn over the complete test results, while using them to impeach a defense witness and as part of its case in chief and, therefore, Dr. Rohm's evidence should be excluded.

The appellant's access to materials to be used against him at trial and in possession of the state is governed by Rule 16(a), M.R.Crim.P. The purpose of allowing discovery by the defendant is stated in Glassman, Maine Practice, § 16.1:

> "The basic premise behind Rule 16 is that discovery can have the same beneficial effects in criminal cases that it has in civil actions and should, therefore, be permitted. It can eliminate concealment and surprise; thereby destroying the 'sporting' aspects of a criminal trial. It can assist in the fair and expeditious disposition of cases prior to trial. It can eliminate any imbalance which exists between the parties as to the means and ability to secure evidence. Finally, it can assure a fuller presentation of the evidence to the trier of fact."

We affirmed this rationale in State v. Cloutier, 302 A.2d 84, 87 (Me.1973).

■ In the instant case Dr. MacKinnon was informed by the psychologist's report given pursuant to the Court order that the MMPI test had been performed. He was familier with the test. Although not actually given the test results, it was apparent he knew they existed. The appellant at no time prior to the trial requested further discovery to secure the test results. Dr. MacKinnon did not hesitate to make his diagnosis without the test results and even indicated at one point that evaluation of the results was the proper function of the psychologist administering the test and not a function of a psychiatrist.

The evils contemplated by the rule, unfair surprise and an imbalance in the ability to secure evidence, are not apparent in this case. Furthermore, the appellant has made no showing of prejudice to his defense by not having these test results. He has failed to show any bad faith on the state's part in omitting these results from the records submitted.

This point is without merit.

*Point VI*

Appellant now challenges a basic instruction given the jury, namely: "The defendant . . . has the burden of proving his mental disease . . . by the greater weight of the evidence." [8] Admittedly, he argues, the Justice "clearly stated the Maine law as it exists," but, since both arson and robbery require proof of criminal intent, "the proof of mental capacity [to form such an intent] is a necessary element . . . and, as such, the proof must be borne by the State and shown beyond a reasonable doubt." The requested instructions (n. 2, *supra*) were designed to raise this issue and, appellant contends, the refusal to so instruct was error of a constitutional dimension and violated the mandate of In Re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970).

The cornerstone of this argument is the proposition that criminal intent can only exist in the mind of a person free of mental disease (or defect), thus leading to the conclusion that proof of such freedom from mental disease (or defect) is a prerequisite to proof of criminal intent, or "Mens Rea," and must be established beyond a reasonable doubt by the state.

■ We do not adopt the premise upon which this argument is based. A person may well specifically intend to burn a structure, or to commit a robbery, even

8. State v. Durgin, 311 A.2d 266 (Me.1973).
State v. Collins, 297 A.2d 620, 637 (Me.1972).
State v. Park, 159 Me. 328, 193 A.2d 1 (1963).

State v. Quigley, 135 Me. 435, 199 A. 269 (1938).
State v. Lawrence, 57 Me. 574 (1870).

though he may suffer from a mental disease or defect which causes him to formulate such an intent. Maine law simply holds that he is not criminally responsible for consummating such a crime under those circumstances.[9] Appellant's argument would compel us to engraft to the concept of "mens rea"—in all segments of our penal code where criminal intent is made an element of the crime—the additional element of sanity.

We do not conceive that the mandate of In Re Winship requires us to retreat from our long established rule so succinctly stated by Mr. Justice Sullivan in State of Maine v. Hathaway, 161 Me. 255, 263, 211 A.2d 558, 563 (1965):

> "In this jurisdiction a defendant pleading not guilty to crime by reason of insanity has the burden of satisfying the jury by a preponderance of the evidence of the truth of such affirmative defense."

Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), met the argument that an Oregon statute violated the Due Process Clause of the United States Constitution because it placed on a criminal defendant pleading insanity the burden of proving the same beyond a reasonable doubt. Mr. Justice Clark, speaking for a majority of the Court, held:

> "We are therefore reluctant to interfere with Oregon's determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice."

343 U.S. at 799, 72 S.Ct. at 1007–1008, 96 L.Ed. at 1309.

In United States v. Greene, 160 U.S. App.D.C. 21, 489 F.2d 1145 (1973), a challenge was made to the statutory rule in the District of Columbia which, as does the Maine rule, places the burden upon a defendant asserting insanity as a defense to prove the same by a preponderance of the evidence. In *Greene* the appellant, as does the appellant here, relied on the proposition that In Re Winship had in effect overruled Leland v. Oregon, *supra*. The *Greene* Court rejected this argument, viewing Leland v. Oregon "as an authoritative and binding precedent, unless modified or overruled by the Supreme Court." 489 F. 2d at 1156.

In Phillips v. Hocker, 473 F.2d 395 (9th Cir. 1973), the appellant, in a post-conviction proceeding following his Nevada conviction, argued that the Nevada rule which placed the burden of proving insanity by a fair preponderance of the evidence on a defendant violated the Due Process Clause of the Constitution of the United States. The Ninth Circuit used this language in resolving that argument:

> "We also noted that *Leland* was specifically mentioned in [*Winship*], and we find no intimation in [*Winship*] that *Leland* should be questioned as to its holding on the nonconstitutional aspect of the insanity defense.
>
> We believe that *Leland* remains viable and conclude that the first issue urged by appellant presents no constitutional question reviewable in these proceedings. . . ."

473 F.2d at 398. The United States Supreme Court denied certiorari in *Phillips*. See Phillips v. Hocker, 411 U.S. 939, 93 S. Ct. 1916, 36 L.Ed.2d 401 (1973). Phillips had previously raised the same issue in a direct appeal. Phillips v. State of Nevada, 86 Nev. 720, 475 P.2d 671 (1970). His petition to the United States Supreme Court for a writ of certiorari was denied on June 29, 1971. Phillips v. Nevada, 402 U.S. 940, 91 S.Ct. 2260, 29 L.Ed.2d 719.

In two other state court decisions where comparable issues were raised, the United States Supreme Court has denied certiorari since *Winship* was decided. Parkin v.

---

9. "An accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect." 15 M.R.S.A. § 102.

State, 222 So.2d 457 (Fla.1969), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed. 2d 322 (1971); Criswell v. State, 84 Nev. 459, 443 P.2d 552, aff'd 86 Nev. 573, 472 P.2d 342 (1968), cert. denied, 400 U.S. 946, 91 S.Ct. 251, 27 L.Ed.2d 251 (1970).

Dealing with an issue analogous to the one here under discussion, namely, a due process challenge to a state policy involving the acceptance of a jury verdict of guilt despite three dissenting votes, the United States Supreme Court rejected the contention that the rule violated the holding in In Re Winship and cited Leland v. Oregon with approval. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed. 2d 152 (1972).

In our own jurisdiction we have on two occasions since In Re Winship was decided recognized the continuing viability of the policy announced in State of Maine v. Hathaway, *supra*. State v. Durgin, n. 8, *supra*; State v. Collins, n. 8, *supra*.

From this analysis it is clear to us that Leland v. Oregon *remains a valid authority* for the retention of the rule originally fashioned in Maine over one hundred years ago. Until this rule is modified or overruled by appropriate authority, we adhere to the proposition that there is no constitutional infirmity in placing upon a criminal defendant the affirmative duty of establishing by a fair preponderance of the evidence that the unlawful act with which he is charged is the product of mental disease or mental defect. *See* United States ex rel. Tate v. Powell, 325 F.Supp. 333 (D.C. Pa.1971).

There is no merit in this contention.

The entry is:

Appeal denied.

POMEROY, J., did not sit.

All Justices concurring.